THE STATE OF WASHINGTON, *Respondent*, v. JEFFREY ALLEN
LYNCH, *Appellant*.

THE STATE OF WASHINGTON, *Respondent*, v. DONDREY
LEVON WHITTED, *Appellant*.

THE STATE OF WASHINGTON, *Respondent*, v. AARON RAMONE
JEFFERSON, *Appellant*.

*David B. Koch* of *Nielsen, Broman & Associates, P.L.L.C.*, for appellant Lynch.

*Kimberly N. Gordon* of *Washington Appellate Project*, for appellant Whitted.

*Rita J. Griffith,* for appellant Jefferson.

*Norm Maleng, Prosecuting Attorney,* and *Charles W. Lind, Deputy,* for respondent.

GROSSE, J. — Finding sufficient evidence to prove motiva-

tion for the assaults and therefore proof of the crimes, we affirm the juvenile court dispositions finding Jeffrey Allen Lynch, Dondrey Levon Whitted, and Aaron Ramone Jefferson guilty of malicious harassment. Under the specific facts of this case, however, and notwithstanding the antimerger clause of the malicious harassment statute, separate punishments for fourth degree simple assault and malicious harassment are an impermissible violation of the appellants' double jeopardy rights.

## FACTS

In the late afternoon of March 9, 1996, M and C, a gay couple, were at home when their dog started barking wildly. C looked up and saw three young men peering into the living room window. M went to the window to investigate further. There he saw Jefferson grabbing his crotch and motioning for M to come outside. Jefferson was also saying something but neither M nor C could hear what was being said. M went to the door and asked the youths what they were doing and if they had some sort of problem. Two of the youths began making lewd gestures and comments regarding the couple's sexual orientation. The "conversation" degenerated from there, with some of the youths calling M derogatory names. Unfortunately, M "returned the favor" and began using racial slurs.[1] During this time Whitted was dancing around "like a boxer" making derogatory remarks and taunts. Jefferson made lewd gestures and taunts as well. Lynch stood by with a basketball in his hands, amused with what was going on, but not joining in the verbal fray.

Eventually the youths went to a gate in C and M's fence and began kicking it. Jefferson attempted to come through the gate but M forced him back off the property. Whitted attempted to pull the mailbox out of the ground but then turned and hit M in the face with his fist. M turned to

[1]Two of the young men, Jefferson and Whitted, are African-American; Lynch is Caucasian.

walk into the house when Lynch threw the basketball and struck M in the back of the head. M then turned around to come out the gate. But neighbors interceded and the fracas did not escalate further. The juveniles were slow to leave, however, and as they did, Jefferson kicked a nearby fence, dislodging a picket. He took the picket, which had exposed nails, and started towards M. M picked up a dowel to defend himself. Jefferson struck M in the arm with the picket and then left.

Each juvenile was charged with one count of assault in the fourth degree. The charges were amended to add an additional count of malicious harassment based on the youths' perception of M's sexual orientation, and the physical injury to M.[2] The cases were consolidated for adjudication. The juvenile court found the youths guilty of both offenses and on disposition sentenced them to standard range sentences on each offense, to be served consecutively as is standard in juvenile proceedings.[3] The youths appeal.

## SUFFICIENCY OF THE EVIDENCE RE: MALICIOUS HARASSMENT

Although the juveniles concede they assaulted M, they challenge the sufficiency of the evidence to support their adjudication of guilt for malicious harassment. The youths assert there was insufficient evidence to prove they assaulted M because he is gay. They claim that M's name-calling, once the incident began, was the real reason for the assault. However, the evidence clearly shows that the juveniles chose M as their target, or did so in a way that is reasonably related, or directed, to the fact that M is gay.

---

[2]Each of the charging documents allege as follows:

That the respondent, [name], in King County, Washington, together with others, on or about 9 March 1996, did maliciously and intentionally and because of his perception of the victim's sexual orientation, did cause physical injury to [M];

Contrary to RCW 9A.36.080(1)(a) (b) or (c), and against the peace and dignity of the State of Washington.

[3]*See* RCW 13.40.180.

■ ■ In reviewing the sufficiency of the evidence to support a finding of guilt, this court views the evidence in the light most favorable to the prosecution to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[4] To determine whether the necessary quantum of proof exists, this court need not be convinced of their guilt beyond a reasonable doubt, but need only be satisfied that there was substantial evidence to support the State's case against each of the juveniles on a case-by-case basis.[5]

■ The pertinent part of the malicious harassment statute states:

(1) A person is guilty of malicious harassment if he or she maliciously and intentionally commits one of the following acts because of his or her perception of the victim's race, color, religion, ancestry, national origin, gender, sexual orientation, or mental, physical or sensory handicap:

(a) Causes physical injury to the victim or another person[.][6]

The statute enhances the punishment for criminal *conduct* where, as here, the juveniles chose their victim because of the victim's perceived membership in a protected category. To convict, the State had to prove two prongs, a physical injury or assault, and that the conduct was motivated at least in part by the sexual orientation of the victim.

There is no doubt that the young men caused physical injury to M. Whitted punched him in the face, Lynch hit him in the back of the head with a basketball, and Jefferson swung a picket, hitting M in the arm.

■ Viewing the evidence in the light most favorable to

---

[4]*State v. Smith*, 106 Wn.2d 772, 725 P.2d 951 (1986); *State v. Green*, 94 Wn.2d 216, 221, 616 P.2d 628 (1980) (citing *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979)).

[5]*State v. Galisia*, 63 Wn. App. 833, 838, 822 P.2d 303 (1992) (citing *State v. McKeown*, 23 Wn. App. 582, 588, 596 P.2d 1100 (1979)).

[6]RCW 9A.36.080.

the prosecution, the evidence shows the following: the youths peered into the gay couple's house, they made lewd gestures, they asked if M and his partner were doing specific sexual acts, they grabbed their crotches and told M they had something for him, they called M names and shouted derogatory slurs at him, they taunted him to come outside and threatened to assault him. When M did come outside, Whitted punched him in the mouth, Lynch hit him with a basketball, and Jefferson hit him with a picket from a neighbor's fence. The statements and actions of the juveniles may be used as circumstantial evidence of victim selection.[7] Based on these actions and the comments, it is clear there is sufficient evidence for a rational trier of fact to find Lynch, Whitted, and Jefferson guilty of malicious harassment.

 Lynch argues that even if there is sufficient evidence to convict the others, he did not participate in the name calling and there is insufficient evidence to show that he acted out of any maliciousness or disdain for the victim. But an information that charges an accused as a principal adequately apprises him of his potential liability as an accomplice. As stated in *State v. Rodriguez*,[8] " 'The complicity rule in Washington is that any person who participates in the commission of the crime is guilty of the crime and is charged as a principal.' "[9] Even if Lynch did not make any sexually derogatory remarks, the evidence is clear that he was an accomplice of the others.[10] The young men all participated in the crime, and assaulted the victim, and as a result were accomplices of the others.

 Further, Lynch failed to diffuse the situation or leave to go to his home, which was a few houses down the street,

---

[7]*State v. Talley*, 122 Wn.2d 192, 211, 858 P.2d 217 (1993).

[8]*State v. Rodriguez*, 78 Wn. App. 769, 773-74, 898 P.2d 871 (1995), *review denied*, 128 Wn.2d 1015 (1996).

[9]*Rodriguez*, 78 Wn. App. at 773 (quoting *State v. Silva-Baltazar*, 125 Wn.2d 472, 480, 886 P.2d 138 (1994)).

[10]*State v. Robertson*, 88 Wn. App. 836, 846, 947 P.2d 765 (1997), *review denied*, 135 Wn.2d 1004 (1998).

even when encouraged by another neighbor to do so. He was a knowing and willing participant. He could hear what the others were saying and doing and chose not to leave. The State did not have to prove that he shared the same mental state with the others.[11]

■ The argument of all three young men, that they were simply reacting to M's racial slurs, does not have merit. This argument has been rejected in *State v. Pollard*.[12] As explained in *Pollard*, this claim confuses the *selection* of the victim, which by definition is made beforehand, with the randomness of the *encounter* with the victim.

From the evidence before it, a rational trier of fact could find that a substantial factor in the young men's decision to instigate the incident, and later assault M, was their perception of his sexual orientation. The juvenile court did not err in finding them guilty of malicious harassment.

## DOUBLE JEOPARDY/ANTIMERGER

Next, appellants argue that under these specific facts the separate punishments for both malicious harassment and simple assault violate prohibitions against double jeopardy, even when considering the antimerger clause of the malicious harassment statute.

■ "The double jeopardy clauses of the Fifth Amendment and article I, section 9 of the Washington Constitution prohibit multiple punishments for the same offense."[13] As set forth in *Blockburger v. United States*:

> The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses

---

[11]*Galisia*, 63 Wn. App. at 840; *State v. Bockman*, 37 Wn. App. 474, 682 P.2d 925 (1984).

[12]*State v. Pollard*, 80 Wn. App. 60, 65-66, 906 P.2d 976 (1995).

[13]*State v. Hull*, 83 Wn. App. 786, 792, 924 P.2d 375 (1996) (citing *State v. Calle*, 125 Wn.2d 769, 888 P.2d 155 (1995) and *State v. Maxfield*, 125 Wn.2d 478, 886 P.2d 123 (1994)), *review denied*, 131 Wn.2d 1016 (1997).

or only one, is whether *each* provision requires proof of a fact which the other does not.[14]

Consequently, we must look to the statutory offenses to determine whether *each* of the offenses as charged here has elements that differ from the other. Avoidance of double jeopardy prohibitions of multiple punishments will be satisfied only where each offense charged contains at least one element that differs from the other.[15] As charged here, malicious harassment and simple assault fail the test.

Malicious harassment requires proof that an assault was maliciously and intentionally committed in part because of the perception of one of a number of protected categories, here, sexual orientation. This element is not found in simple assault. But fourth degree simple assault requires only an assault not amounting to any of the other assault crimes. It, by definition, does not require any other element not found in malicious harassment.

The instant case is distinguishable from *State v. Calle*[16] in which the Court found that rape and incest were identical in fact, but not identical in law because incest requires proof of relationship, whereas rape requires proof of force. There, each offense has an element not included in the other. Here, like *Calle*, the crimes charged were identical in fact. But unlike *Calle*, malicious harassment, *as charged here*, results in a physical injury, which by definition, constitutes sufficient evidence to support a finding of guilt for fourth degree assault. As charged, fourth degree assault does not have a "non-included" element different from malicious harassment.[17]

---

[14]*Blockburger v. United States*, 284 U.S. 299, 304, 52 S. Ct. 180, 76 L. Ed. 306 (1932) (emphasis added).

[15]*Hull*, 83 Wn. App. at 792-93 (citing *In re Personal Restraint of Fletcher*, 113 Wn.2d 42, 49, 776 P.2d 114 (1989)).

[16]*State v. Calle*, 125 Wn.2d 769, 888 P.2d 155 (1995).

[17]We recognize potential cases of malicious harassment exist that require proof of elements other than those included in a mere simple assault; i.e. higher degrees of assault, or various degrees of murder or attempted murder. But that is not the case here. Additionally, where a defendant is charged under one of the alternative sections of the malicious harassment statute, involving the destruc-

*State v. Worl*[18] is distinguishable on the same basis. Worl was punished for the separate conduct of attempting murder; he was not punished twice for the same conduct.

The State argues that even if double jeopardy is otherwise violated, the antimerger clause contained in the malicious harassment statute allows it to twice punish the young men for their offenses.[19] There is no doubt that in enacting the antimerger provision the Legislature intended to make an assault a felony based on improper victim selection. In enacting the antimerger provision, the Legislature indicated that malicious harassment would not merge with other separate conduct. However, there is no evidence that the Legislature intended malicious harassment based *only* on a fourth degree simple assault to be punished a second time, once as a felony and once as a separate misdemeanor. This is akin to construing the burglary antimerger statute to permit punishment for criminal trespass as well as burglary.

The Legislature specifically indicated it was adding the antimerger clause of the malicious harassment statute, not as a substantive change in the law, but only as a clarification of existing law.

> The law is clarified . . . to expressly provide that a person who commits *another crime* during the commission of a crime may be punished and prosecuted for the other crime separately. . . .

---

tion of property or the placing of victims or others in fear of injury, proof of different elements from those of malicious harassment are involved. But where the malicious harassment charge is based solely on fourth degree simple assault under RCW 9A.36.080(1)(a), there must always be an alleged physical injury to the victim or another person that necessarily must be proved. Therefore proof of malicious harassment charged in this manner will always establish a fourth degree simple assault.

[18]*State v. Worl*, 74 Wn. App. 605, 611-12, 875 P.2d 659 (1994) (holding that attempted second degree murder has elements separate from and additional to malicious harassment under RCW 9A.36.080(1)(a)), *rev'd in part on other grounds*, 129 Wn.2d 416, 918 P.2d 905 (1996).

[19]The malicious harassment statute contains an antimerger provision that states: "Every person who commits *another crime* during the commission of a crime under this section may be punished and prosecuted for the other crime separately." RCW 9A.36.080(5) (emphasis added).

These additions are not changes to existing law, simply clarifications.[20]

Here, the juveniles were found guilty twice for their conduct; the participation in a fourth degree assault and for participation in the same assault, but enhanced because of victim selection. The Legislature intended only to permit punishment of separate charges for other crimes committed during the commission of malicious harassment.

The State argues that the difference between the burglary antimerger statute and the malicious harassment antimerger statute is that criminal trespass is always a "lesser included" of burglary, whereas a defendant does not have to commit fourth degree assault to commit malicious harassment. But in the instance where, as here, the State files two charges, one under the first alternative prong of RCW 9A.36.080(1)(a) (malicious assault requiring physical assault or injury), and one under RCW 9A.36.041 (fourth degree assault), the distinction is lost. Despite the antimerger section of the statute, punishment for both offenses under these specific facts constitutes a violation of double jeopardy.

We are not unmindful that this court upheld separate sentences for assault and malicious harassment in *State v. Robertson*.[21] But in that case the argument was made that the sentence violated the 150 percent rule, not that it was a violation of double jeopardy. Further, the assault in *Robertson* was charged as second degree assault, with a lesser included of third degree assault. It was not malicious harassment merely based on a "simple assault" and those assault charges contained elements not found in malicious harassment.

The juvenile dispositions and subsequent punishment on the charges of malicious harassment are affirmed, but the dispositions on the simple assault charges are a violation of

---

[20]H.B. Rep. ESHB 1569, at 5 (as passed House Mar. 16, 1993) (changing provisions relating to malicious harassment) (emphasis added).

[21]*Robertson*, 88 Wn. App. at 847-49.

the young men's double jeopardy rights. The sole alleged predicate conduct for the malicious harassment here was a fourth degree simple assault that does not contain a separate element from the malicious harassment. Accordingly, the dispositions regarding the charges of fourth degree assault are reversed and dismissed.

KENNEDY, C.J., and BECKER, J., concur.

[No. 40159-9-I. Division One. January 25, 1999.]