32 P.3d 1029 (2001)
STATE of Washington, Respondent,
v.
Allan Wesley PARMELEE, Appellant.
Nos. 44608-8-I, 47671-8-I.
Court of Appeals of Washington, Division 1.
October 15, 2001.
*1030 James Robert Dixon, Nielsen, Broman & Assoc. Pllc, Seattle, for Appellant.
James Morrissey Whisman, Andrea Ruth Vitalich, King County Prosecutors Office, Seattle, for Respondent.

PUBLISHED IN PART
AGID, C.J.
Allan Parmelee appeals his convictions for one count of felony stalking and three counts of gross misdemeanor violation of either a protection order or a no-contact order. We affirm the convictions but remand for resentencing because two of Parmelee's convictions for violation of a protection order merge with the stalking conviction, and the trial court erred by imposing probation conditions *1031 where it did not impose a suspended sentence.

FACTS
Renee Turner and Allan Parmelee married in 1994. They had one child, a son. After they married, Turner discovered that Parmelee corresponded by phone and mail with numerous incarcerated people.[1] Many of the letters were related to Parmelee's efforts to promote a book he had written on how to win a disciplinary hearing. Parmelee's correspondence with prisoners caused Turner great concern. He agreed with Turner that it would be dangerous for prisoners to know where they lived and said he would set up a post office box.
In April 1997, Turner filed for divorce. She also filed for a protection order against Parmelee, which she obtained for one year. Turner had legal counsel and Parmelee represented himself during the contentious divorce proceedings. After a trial, the dissolution was finalized in April 1998 and the court entered a permanent protection order. The child resided solely with Turner. Parmelee appealed the divorce.
While the dissolution appeal was pending, Turner received two envelopes in the mail containing some highly offensive printouts from a website that Parmelee had created. Turner contacted the police and they investigated. As a result, Parmelee was found guilty in Seattle Municipal Court for violating the protection order. The municipal court issued two no-contact orders, one on March 19, 1998, and the other on May 21, 1998, at the sentencing.[2]
During the municipal court proceeding, Parmelee was incarcerated at the Federal Detention Center (FDC) in SeaTac on unrelated charges. Shortly after his conviction for violating the protection order, Turner began receiving letters from prisoners at the FDC. Turner "was scared to death. I was just traumatized, and it was awful." Turner suspected that Parmelee had asked prisoners to write to her at her home address; she did not know anyone else who was incarcerated.
Turner testified that the first letter she received "was a letter like if you wanted to be a pen pal." The inmate described himself and asked Turner to write him back and send a "sexy picture." Because Turner had never sought correspondence with any prisoners, "anything that was in the letter [she] considered to be offensive." The second letter Turner received was very graphic and described sexual acts that the prisoner wanted to perform with Turner. It also requested a "sexy picture" of Turner. Turner contacted the police, who instructed her not to handle any future correspondence. When Turner received a third letter, she handed it over to the police without opening it.
Turner took her son and left town in fear. Two more letters arrived which were collected by Turner's neighbor and turned over to the police. Turner returned after a month and changed the way her mail was delivered. Turner never read any of the letters after the second one. Each of the five letters was written by a different individual. Three of them eventually served as the bases for the court order violation charges at issue here.
The State initially charged Parmelee with one count of felony stalking and five counts of misdemeanor violation of a protection order. At trial, three of the prisoners who wrote letters testified: Randy Ness, Roger Hotrum, and Pedro Alcantar Gutierrez. Ness and Gutierrez were prisoners at the FDC; Hotrum was incarcerated in the Spokane County Jail. Of the three witnesses, only Gutierrez had written a letter that Turner had received and read.[3]
Ness and Parmelee met in the law library at the FDC. Ness asked Parmelee if he knew of anyone he could write to, and Parmelee gave him Turner's name and address. Parmelee told Ness that Turner was his ex-wife, that she would send him photos, and that *1032 "she liked people that had been locked up." Ness also described a flyer that Parmelee had distributed to him and to others. The flyer read:
Renee Turner, 231541st Avenue East, Seattle, Washington, 98112, age 48, height 5 foot 8, weight 135, hair red, dark, race white, recently divorced ex-husband in jail for long time, likes ex-cons, loves sex, wants men to come live with her, will send money if requested with photo, likes you to talk dirty to her, say you saw her ad in the prison magazine.
Ness testified that he sent Turner a friendly letter along with a prison picture of himself. A week later, police detectives visited Ness at the jail and he gave them a written statement. Ness later saw Parmelee, who wanted Ness to write Turner again. Parmelee told Ness he wanted to make Turner's life a "living hell" and asked Ness to pass around Turner's address to others. Ness did not write to Turner again.
Gutierrez also met Parmelee in the FDC library. Parmelee told him that he had a woman friend who likes Mexicans and asked if Gutierrez would like to write to her. Gutierrez agreed, and Parmelee gave Gutierrez Turner's address and three stamps. Parmelee encouraged Gutierrez to write a "nasty" letter. With the help of another inmate, Gutierrez wrote a letter to Turner. A detective visited Gutierrez a week later. Gutierrez became angry that Parmelee had caused him to risk getting into trouble. He visited Parmelee and told him he was "going to kick his ass."
Hotrum was in the Spokane County Jail when another prisoner handed out some flyers soliciting letters to Turner. Hotrum wrote to Turner. He included personal information about himself. He also asked Turner to tell him more about herself and to send a picture.
Testimony and evidence at trial revealed that Parmelee had gone to great lengths to distribute the flyer among various prison populations. He asked Randy Keener, an FDC inmate who did work detail in the library, to make copies of the flyer. Keener testified that when he expressed reservations about making the copies, Parmelee said to him: "Everything [Turner] gets, she deserves," and "I hope someone rapes her, kills her, and she dies." Parmelee asked Keener to give the flyers "specifically to the blacks and the Mexicans." Parmelee also wrote to Mike Lee with "Raze the Walls" publishing. He enclosed one of the flyers and asked Lee to distribute it to as many prisoners as possible, but at least "the sex unit at Monroe."

PROCEDURAL HISTORY
The State filed charges on August 13, 1998. Parmelee was in federal custody at that time. The State filed a detainer with the federal authorities on August 21. A writ issued on September 15, and Parmelee was arraigned in State court on September 28.
Before trial, there were numerous hearings and status conferences to address the issues for trial. The court denied Parmelee's motion to dismiss for untimely arraignment and violation of speedy trial. At an omnibus hearing on February 26, 1999, the prosecutor indicated that the charges might be amended based on the outstanding no-contact orders. The court instructed the State to notify the defense orally of any intention to amend no later than March 2. The State complied with that direction.
Trial began on March 9. The State filed the amended information alleging one count of felony stalking and three counts of gross misdemeanor violation of either a protection order or a no-contact order, based on the letters written by Ness, Gutierrez, and Hotrum. Parmelee objected and asked for a continuance. The court granted the motion to amend and denied the motion for a continuance.
A jury found Parmelee guilty as charged. The jury also returned a special verdict, finding that Parmelee had violated the permanent protection order and the two no-contact orders. The court imposed a standard range sentence of 12 months for felony stalking and ordered that Parmelee have no contact with Turner for the maximum term. It imposed 12-month sentences on each misdemeanor count, to be served consecutively to one another and the stalking charge. The court also ordered probation conditions for a "suspended *1033 sentence," despite the fact that it had not suspended any portion of Parmelee's sentences. Parmelee appealed.

DISCUSSION
1. Double Jeopardy
Parmelee first contends that his convictions for felony stalking and court order violations violate double jeopardy principles because they were based on the same acts. The State counters that because each court order violation conviction was predicated on a separate letter, the same act or transaction was not the basis for all of Parmelee's convictions and traditional double jeopardy principles do not apply. We agree with the State.
The double jeopardy clauses of the Fifth Amendment and article I, section 9 of the Washington Constitution prohibit multiple punishments for the same offense.[4] The United States Supreme Court set forth the following test for determining whether two actions are the same or separate offenses in Blockburger v. United States:[5]
The applicable rule is, that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not.[[6]]
This test presumes that "the same act or transaction" violates two or more criminal statutes. That preliminary requirement is not met here.
Each of the three charges filed against Parmelee for violating one of the no-contact orders or the protection order was based on a different, individual letter mailed to Turner.[7] In contrast, the stalking charge was based on allegations of repeated harassment established by the multiple letters.[8] Thus, each "act or transaction" in this case does not violate both statutes.[9]
2. Merger Doctrine
Stalking is defined in RCW 9A.46.110(1). The crime is generally a gross misdemeanor, but it becomes a felony if any one of a number of circumstances is present.[10] One of the grounds for elevating the crime to felony status is that "the stalking violates any protective order protecting the person being stalked[.]"[11] Parmelee was convicted under this subsection. Based on this provision, Parmelee contends that violation of a protection order is an essential element of stalking, and the merger doctrine therefore prohibits his multiple convictions. He claims the Legislature did not intend the crimes to be separate offenses because it did not enact an "anti-merger" statute as it has for burglary[12] and malicious harassment.[13] We conclude that two of Parmelee's three convictions for court order violations should merge into the stalking conviction because the statute requires more than one underlying actrepetitive behaviorto constitute stalking.
*1034 The double jeopardy clauses of the United States and Washington constitutions are the foundation for the merger doctrine.[14] The doctrine is a rule of statutory construction and applies only where the Legislature has clearly indicated that in order to prove a particular degree of crime, "the State must prove not only that the defendant committed that crime but that the crime was accompanied by an act which is defined as a crime elsewhere in the criminal statutes."[15] The merger doctrine is relevant only when a crime is elevated to a higher degree by proof of another crime proscribed elsewhere in the criminal code.[16] Whether the merger doctrine applies is determined by legislative intent:
[T]he merger doctrine is a rule of statutory construction which only applies where the Legislature has clearly indicated that in order to prove a particular degree of crime (e.g., first degree rape) the State must prove not only that a defendant committed that crime (e.g., rape) but that the crime was accompanied by an act which is defined as a crime elsewhere in the criminal statutes (e.g., assault or kidnapping)....[[17]]
Where offenses merge and the defendant is punished only once, there is no danger of a double jeopardy violation.
We hold that two of Parmelee's three convictions for protection order violations merge into the felony stalking conviction because the State was required to prove facts to support at least two of the protection order violation convictions in order to establish facts sufficient for a felony stalking conviction under RCW 9A.46.110(5)(b). Stalking requires a finding of repeated harassment or repeated following,[18]i.e., repeated events constitute the crime of stalking. Two harassing events would be sufficient to satisfy the requirement that the behavior be repeated. Thus, with respect to at least two of the three protection order violations, the State was required to prove that those violations occurred in order to secure convictions for both felony stalking and the protection order violations. As such, two of Parmelee's protection order violations are essential elements of the crime of felony stalking and, because they are acts defined elsewhere in the criminal statutes as crimes, they merge into the stalking conviction. The third protection order violation conviction was not an essential element of felony stalking and thus stands as an independent conviction. On remand, the trial court should sentence Parmelee for the stalking conviction and only one of the protection order violation convictions.
The remainder of this opinion has no precedential value. Therefore, it will be filed for public record in accordance with the rules governing unpublished opinions as provided in RCW 2.06.040.
NOTES
[1] Before marrying Turner, Parmelee had been incarcerated in a federal prison in Illinois.
[2] The March 19 no-contact order expired on September 19, 1998, and the May 21 no-contact order expired on May 21, 2000.
[3] Gutierrez's letter was the second letter Turner received.
[4] State v. Lynch, 93 Wash.App. 716, 723, 970 P.2d 769 (1999).
[5] 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932).
[6] Id. at 304, 52 S.Ct. 180 (emphasis added).
[7] See RCW 10.99.040, 10.99.050; RCW 26.50.110.
[8] See RCW 9A.46.110.
[9] The cases on which Parmelee relies are distinguishable because, in contrast to this one, they do not involve double jeopardy analysis where a collection of crimes served as the basis of another crime. See Lynch, 93 Wash.App. 716, 970 P.2d 769 (malicious harassment and fourth degree assault); State v. Potter, 31 Wash.App. 883, 645 P.2d 60 (1982) (reckless driving and reckless endangerment); State v. Springfield, 28 Wash. App. 446, 624 P.2d 208, review denied, 95 Wash.2d 1020 (1981) (first degree robbery and second degree assault); State v. Cunningham, 23 Wash.App. 826, 598 P.2d 756 (1979), reversed on other grounds, 93 Wash.2d 823, 613 P.2d 1139 (1980) (first degree manslaughter and second degree assault); State v. Bresolin, 13 Wash.App. 386, 534 P.2d 1394 (1975), review denied, 86 Wash.2d 1011 (1976) (robbery and second degree assault).
[10] See RCW 9A.46.110(5).
[11] RCW 9A.46.110(5)(b).
[12] See RCW 9A.52.050.
[13] See RCW 9A.36.080(5).
[14] State v. Calle, 125 Wash.2d 769, 772, 888 P.2d 155 (1995).
[15] State v. Frohs, 83 Wash.App. 803, 806, 924 P.2d 384 (1996).
[16] State v. Eaton, 82 Wash.App. 723, 730, 919 P.2d 116 (1996).
[17] State v. Vladovic, 99 Wash.2d 413, 420-421, 662 P.2d 853 (1983).
[18] See RCW 9A.46.110(1)(a).