IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 28932-0-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ELODIO RIZO, aka DOMINGO RIZO | ) | UNPUBLISHED OPINION |
| REYES | ) | |
| | ) | |
| Appellant. | ) | |

KORSMO, C.J. — Elodio Rizo challenges his convictions for first degree robbery

and two counts of first degree assault–and resulting persistent offender sentence—on the

basis of evidentiary sufficiency, evidentiary error, the merger doctrine, and *Blakely*[1]

related arguments concerning his sentence. We affirm.

## FACTS

This appeal arises from a shoplifting incident. On November 25, 2007, Elodio

Rizo entered the Sears store in Union Gap accompanied by Julia Pina. Mr. Rizo and Ms.

Pina moved toward the cologne department. They were observed by loss prevention

officer Timothy Englund who was monitoring the store's security cameras. He watched

Ms. Pina place several bottles of cologne in her shopping cart under her purse. She

---

[1] *Blakely v. Washington*, 542 U.S. 296, 303-04, 124 S. Ct. 2531, 159 L. Ed. 2d 403
(2004).

proceeded to the back of the store, where surveillance cameras captured Ms. Pina placing the cologne bottles inside her purse before she and Mr. Rizo exited the store.

When Mr. Englund witnessed Ms. Pina place the cologne in her purse, he directed his coworker Rigoberto Cardenas to wait outside the store's exit. Mr. Englund ran outside to join Mr. Cardenas when he saw Mr. Rizo and Ms. Pina exiting the store.

Mr. Cardenas approached the pair, identified himself, and said, "I need all my unpaid merchandise." Ms. Pina attempted to push Mr. Cardenas away, and she and Mr. Rizo started to walk past Mr. Cardenas. Mr. Englund also approached Ms. Pina, identified himself as a loss prevention officer and asked her to return the cologne. She refused.

Both security officers testified that Mr. Rizo kept walking, pulled his hand out of his pocket or waistband holding what appeared to be a silver revolver, and discharged one or two shots. Mr. Englund testified the shots were directed at Mr. Cardenas, while Mr. Cardenas testified he immediately turned to run when he saw the gun and therefore did not know where the gun was pointed when it was fired. Following the gunshots, Ms. Pina and Mr. Rizo got into their car and drove away.

The State charged Mr. Rizo with one count of first degree robbery and two counts of first degree assault. A jury found Mr. Rizo guilty of all three counts.

2

A fingerprint expert testified at sentencing that Mr. Rizo was the same person whose fingerprints were on two judgment and sentence forms that reflected earlier convictions for second degree assault. After finding by a preponderance of the evidence that Mr. Rizo had previously been convicted of the two prior second degree assaults, the trial court ruled that Mr. Rizo was a persistent offender and sentenced him to life in prison without the possibility of parole. The court declined a defense request to merge the assaults and the robbery.

Mr. Rizo timely appealed to this court.

## ANALYSIS

This appeal challenges the sufficiency of the evidence, the trial court's finding that the convictions did not merge, and the jury instruction defining "assault." Mr. Rizo also challenges the finding that he was a persistent offender, claiming this finding violated his right to equal protection, his right to jury trial, and his right to have all the elements of the crime proven beyond a reasonable doubt. Each argument is addressed in turn.[2]

---

[2] Mr. Rizo also claims the trial court abused its discretion by relying on fingerprint comparisons to establish his identity for purposes of criminal history, alleging such reliance was inappropriate because there is a lack of standards regulating these comparisons. However, identification of individuals by the comparison of fingerprints is generally accepted in Washington State, and Washington courts have consistently held that fingerprints from previous judgment and sentences may be used to prove identity for purposes of establishing criminal history. *See e.g., State v. Johnson*, 194 Wash. 438, 442, 78 P.2d 561 (1938); *State v. Ammons*, 105 Wn.2d 175, 190, 713 P.2d 719, 718 P.2d 796

No. 28932-0-III
State v. Rizo

*Sufficiency of the Evidence*

Mr. Rizo claims there was insufficient evidence to support all three convictions. We disagree, and conclude the State presented sufficient evidence to prove each of the three offenses.

Evidence is sufficient to support a verdict if the trier of fact has a factual basis for finding each element of the offense proved beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *State v. Green*, 94 Wn.2d 216, 221–22, 616 P.2d 628 (1980). The reviewing court will consider the evidence in a light most favorable to the prosecution. *Green*, 94 Wn.2d at 221.

Mr. Rizo first argues that the State failed to prove he possessed, displayed or discharged a gun, which was a necessary element of all three crimes as charged.

A person is guilty of first degree assault if he assaults another person with a firearm with the intent to inflict great bodily injury. RCW 9A.36.011(1)(a). "A person commits robbery when he or she unlawfully takes personal property from the person of another or in his or her presence against his or her will by the use or threatened use of immediate force, violence, or fear of injury to that person or his or her property or the person or property of anyone." RCW 9A.56.190. A person is guilty of first degree

---

(1986); *State v. Thorne*, 129 Wn.2d 736, 783, 921 P.2d 514 (1996). Therefore, this argument is without merit and we do not address it in any further detail.

4

robbery if: "(a) In the commission of a robbery or of immediate flight therefrom, he or she: (i) Is armed with a deadly weapon; or (ii) Displays what appears to be a firearm or other deadly weapon; or (iii) Inflicts bodily injury." RCW 9A.56.200. To establish all three charged counts, the State had to prove that Mr. Rizo was armed with a firearm or displayed what appeared to be a firearm in the course of stealing the cologne, and that he assaulted Mr. Englund and Mr. Cardenas with a firearm.

There was sufficient evidence to prove that Mr. Rizo possessed, displayed, or fired a gun in the parking lot. Both loss prevention officers testified they believed they saw a gun in Mr. Rizo's hand, they both testified they heard gunshots, and Mr. Englund testified Mr. Rizo was pointing the gun towards Mr. Cardenas. Kristina Fernandez, another prevention loss officer who was monitoring the surveillance cameras at the time of the incident, testified she heard gunshots. Ms. Pina denied seeing a gun, but admitted she heard two "big booms." Additionally, Detective Alba Levesque testified that the video surveillance from the parking lot was consistent with Mr. Englund's and Mr. Cardena's version of events even though the gun could not be seen on the footage. This evidence was sufficient to show that Mr. Rizo had a gun and he fired it in the direction of the loss prevention officers.

Mr. Rizo also challenges the sufficiency of the robbery conviction on the grounds that the State failed to establish the use of force. He claims that he and Ms. Pina had

5

reached a place of temporary safety in the parking lot when they were stopped, the robbery was complete at that point, and therefore the force only occurred after the robbery had ended.

Washington has rejected the common law view of robbery that the force used during a robbery must be contemporaneous with the taking in favor of the modern transactional view of robbery. *State v. Handburgh*, 119 Wn.2d 284, 830 P.2d 641 (1992). Under the transactional view, a taking can occur outside the presence of the victim, and the necessary force to constitute robbery can be found in the forceful retention of stolen property that was peaceably taken. *Id.* Washington's robbery statute simply requires that the force be used either to obtain or retain property or to overcome resistance to the taking. *State v. Johnson*, 155 Wn.2d 609, 611, 121 P.3d 91 (2005).

Mr. Rizo and Ms. Pina took the cologne peaceably from the store but when confronted in the parking lot, Ms. Pina pushed Mr. Cardenas and Mr. Rizo pulled out his gun. The force was used to retain the stolen property and escape the loss prevention officers. Under *Handburgh* and *Johnson*, robbery occurs when a defendant uses force to retain possession of property, even if the defendant initially took the property peaceably. *Handburgh*, 119 Wn.2d at 293; *Johnson*, 155 Wn.2d at 611. Mr. Rizo's argument that the force was not related to the robbery is without merit. There was force used to retain the property.

6

The State presented sufficient evidence to support all three convictions.

*Double Jeopardy*

Mr. Rizo next argues that his convictions for first degree robbery and first degree assault violate double jeopardy and the convictions should merge under *State v. Freeman,* 153 Wn.2d 765, 108 P.3d 753 (2005). The problem with this argument is that the Washington Supreme Court has held that first degree assault and first degree robbery convictions do not merge.

The constitutional guaranty against double jeopardy protects a defendant against multiple punishments for the same offense. U.S. CONST. amend. V; CONST. art. I, § 9. A double jeopardy violation occurs when, absent clear legislative intent to the contrary, the evidence required to support a conviction for one offense would have been sufficient to warrant a conviction for the other offense. *In re the Pers. Restraint of Orange*, 152 Wn.2d 795, 816, 100 P.3d 291 (2004) (quoting *State v. Reiff,* 14 Wash. 664, 667, 45 P. 318 (1896)).

The merger doctrine avoids double punishment by merging a lesser offense "into the greater offense when one offense raises the degree of another offense." *State v. Collicott,* 118 Wn.2d 649, 668, 827 P.2d 263 (1992). Merger is based on the double jeopardy clauses of the United States and Washington constitutions. *State v. Parmelee,* 108 Wn. App. 702, 710, 32 P.3d 1029 (2001). "The merger doctrine is relevant only

7

when a crime is elevated to a higher degree by proof of another crime proscribed elsewhere in the criminal code." *Id.* When two crimes merge, the trial court convicts the defendant only of the one offense into which the other offense merges. *Id.* at 711.

The State charged Mr. Rizo with committing first degree robbery by:

> unlawfully [taking], from the person or in the presence of Rigoberto Cardenas and/or Timothy Englund working as employees of Sears, the property of another, perfume, against that person's will, by use or threatened use of immediate force, violence, or fear of injury to that person or his/her property or the person or property of anyone in order to obtain or retain the property taken, and in the commission of or immediate flight therefrom, you were armed with a deadly weapon, a firearm; or displayed what appeared to be a firearm or other deadly weapon.

Clerk's Papers (CP) at 60-61. The State also charged Mr. Rizo with two counts of first degree assault, alleging he assaulted both Mr. Englund and Mr. Cardenas with a firearm with the intent to inflict great bodily harm. At sentencing, the trial court found that the three counts did not encompass the same criminal conduct in determining the offender score pursuant to RCW 9.94A.589.

The merger doctrine is triggered when a completed second degree assault elevates robbery to the first degree. RCW 9A.56.200(1)(a)(i)-(ii); RCW 9A.56.190; RCW 9A.36.021(1)(c); *see State v. Kier*, 164 Wn.2d 798, 805, 194 P.3d 212 (2008); *State v. Freeman*, 153 Wn.2d 765, 780, 108 P.3d 753 (2005) (*Freeman* II). However, "an exception to merger applies where the offenses committed in a particular case have

8

independent purposes or effects." *State v. Freeman,* 118 Wn. App. 365, 371-72, 76 P.3d

732 (2003) (*Freeman* I). As our state Supreme Court explained:

> For example, when the defendant struck a victim *after* completing a
> robbery, there was a separate injury and intent justifying a separate assault
> conviction, especially since the assault did not forward the robbery.

*Freeman* II, 153 Wn.2d at 779.

Although *Freeman* II held that a completed second degree assault that elevates

robbery to the first degree requires merger, it also noted there was evidence that the

legislature intended to punish first degree assault and first degree robbery separately:

> However, there is an important piece of evidence that recent legislatures
> intended to punish *first* degree assault and *first* degree robbery separately,
> at least under some circumstances. As the legislature is well aware, when a
> court vacates a conviction on double jeopardy grounds, it usually vacates
> the conviction for the crime that forms part of the proof of the other. This
> is because the greater offense "typically carries a penalty that incorporates
> punishment for the lesser included offence." Akhil Reed Amar & Jonathan
> L. Marcus, *Double Jeopardy Law After Rodney King,* 95 Colum. L. Rev. 1,
> 28 (1995). But when a first degree assault raises a robbery to first degree
> robbery, the case is atypical. The standard sentence for first degree assault
> (in this case, 111 months) is considerably longer than the standard sentence
> for first degree robbery (in this case, 41 months). Given the fact of the
> current sentencing schema, it is unlikely the legislature intended this result.
> While this is not necessarily dispositive, it does weigh upon our analysis.
> *Cf. [In re Pers. Restraint of Burchfield,* 111 Wn. App. 892, 900, 46 P.3d
> 840 (2002)] (considering the seriousness level assigned by the legislature
> when determining how the legislature intended two related crimes to be
> treated).
> . . . .
> Accordingly, we conclude that there is evidence that the legislature did
> intend to punish first degree assault and robbery separately. But we find no

9

evidence that the legislature intended to punish second degree assault
separately from first degree robbery when the assault facilitates the robbery.

*Freeman* II, 153 Wn.2d at 775-76 (citations omitted). Based on fact that the sentence for

first degree assault is significantly greater than the sentence for first degree robbery, the

*Freeman* II court concluded that the merger doctrine did not apply to the defendant's first

degree assault and robbery convictions. *Id.* at 778-80. Given this precedent, Mr. Rizo's

convictions do not merge.

*Jury Instructions*

Mr. Rizo next argues that the trial court erred by giving a conflicting instruction

regarding the mental state required for first degree assault and that his trial counsel was

ineffective for failing to object to the instruction. We review claimed errors of law in

jury instructions de novo; an instruction that misstates the applicable law constitutes

reversible error if it causes prejudice. *State v. Atkinson*, 113 Wn. App. 661, 667, 54 P.3d

702 (2002). However, we conclude that there was no instructional conflict and, thus,

there was no instructional error or ineffective assistance.

The elements instructions, Jury instructions 18 and 26, provided that in order to

convict Mr. Rizo of first degree assault, the jury had to find that four elements were

proved beyond a reasonable doubt: (1) that Mr. Rizo assaulted Mr. Englund and Mr.

No. 28932-0-III
State v. Rizo

Cardenas, (2) the assault was committed with a firearm, (3) Mr. Rizo acted with intent to inflict great bodily harm, and (4) the acts occurred in Washington.

Jury instruction 19 defined "assault," providing:

> An assault is an act, done with intent to inflict bodily injury upon another, tending but failing to accomplish it and accompanied with the apparent present ability to inflict the bodily injury if not prevented. It is not necessary that bodily injury be inflicted.

> An assault is also an act done with the intent to create in another apprehension and fear of bodily injury, and which in fact creates in another a reasonable apprehension and imminent fear of bodily injury even though the actor did not actually intend to inflict bodily injury.

CP at 45.[3]

Mr. Rizo contends that instruction 19 improperly informed the jury that it did not have to find that he acted with the specific intent to inflict bodily injury. He is incorrect. Instructions 18 and 26 informed the jury that in order to find Mr. Rizo guilty of assault, it had to find four elements including that (1) Mr. Rizo assaulted the two loss prevention officers and (2) Mr. Rizo acted with intent to inflict great bodily harm. Instruction 19 provided the jury with two of the three common law definitions of assault, including assault by creation of apprehension and fear of bodily injury even if the actor did not

_____

[3] Instruction 19 largely mirrors 11 *Washington Practice: Washington Pattern Jury Instructions: Criminal* 35.50, at 547 (3d ed. 2008).

11

actually intend to inflict bodily injury. However, this instruction only defined the first element the jury had to find, that Mr. Rizo *assaulted* the two loss prevention officers. Instruction 19 did not change the fact that the elements instructions still required the jury to find that Mr. Rizo acted with intent to inflict great bodily harm when he committed the assault. Although the jury was instructed that one form of assault could occur without a showing of intent to inflict bodily injury, the elements instructions still told the jury that the only culpable form of assault was if Mr. Rizo acted with the intent to inflict great bodily harm. The jury instructions did not create a conflict for the jury. There was no instructional error.[4]

*Persistent Offender Finding*

Mr. Rizo's final two arguments concern the persistent offender finding. He argues the trial court violated his right to equal protection because the term "persistent offender" was classified as a sentencing aggravating factor rather than an element, and he also argues that the trial court violated his constitutional rights to a jury trial and proof beyond a reasonable doubt by finding he was a persistent offender based on prior convictions proved only by a preponderance of the evidence. However, this court has rejected the

---

[4] Since there was no instructional error, Mr. Rizo's claim that trial counsel was ineffective for failing to challenge instruction 19 also fails because he has not shown that counsel's performance was deficient or resulted in actual prejudice. *Strickland v. Washington*, 466 U.S. 668, 690-92, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

12

equal protection argument and both the United States Supreme Court and the Washington

Supreme Court have rejected Mr. Rizo's second contention.

Under the Persistent Offender Accountability Act (POAA), chapter 9.94A RCW,

the trial court must sentence a persistent offender to life in prison without the possibility

of parole. RCW 9.94A.570; *State v. Knippling*, 166 Wn.2d 93, 98, 206 P.3d 332 (2009).

A "persistent offender" is someone who, at the time of sentencing for a most serious

offense conviction, has previously been convicted on two separate occasions of most

serious offenses under RCW 9.94A.525. *See* former RCW 9.94A.030(36)(a) (2010). A

"most serious offense" includes "[a]ny felony defined under any law as a class A felony

or criminal solicitation of or criminal conspiracy to commit a class A felony." Former

RCW 9.94A.030(31)(a) (2010). The State must prove the existence of a defendant's

prior convictions by a preponderance of the evidence. In *re Pers. Restraint of

Cadwallader*, 155 Wn.2d 867, 876, 123 P.3d 456 (2005).

The equal protection clauses of the federal and state constitutions guarantee that

persons similarly situated with respect to the legitimate purposes of the law must receive

equal treatment. *State v. Thorne*, 129 Wn.2d 736, 770-71, 921 P.2d 514 (1996); *State v.

Manussier*, 129 Wn.2d 652, 672, 921 P.2d 473 (1996). Equal protection claims are

reviewed under one of three standards based on the level of scrutiny required for the

statutory classification: (1) strict scrutiny when a fundamental right is threatened; (2)

13

intermediate or heightened scrutiny when important rights or semisuspect classifications are involved; and (3) rational basis scrutiny when none of the above rights or classes is threatened. *Manussier*, 129 Wn.2d at 672-73.

Mr. Rizo maintains that the standard of proof for prior crimes that classify persistent offenders should be the same as the standard of proof for prior crimes that elevate the level of a crime. He relies on *State v. Roswell*, 165 Wn.2d 186, 192, 196 P.3d 705 (2008), for the proposition that when a prior conviction alters the crime that may be charged, the prior conviction is an essential element that must be proved beyond a reasonable doubt. Mr. Rizo contends there is no rational basis for classifying a prior crime as an "element" to be proved beyond a reasonable doubt in some circumstances and as an "aggravator" to be proved with a preponderance of the evidence in other circumstances.

This court rejected a similar equal protection claim in *State v. Williams*, 156 Wn. App. 482, 234 P.3d 1174 (2010). There we noted that a defendant challenging the legislature's differing treatment of two classes of defendants must show that the differing treatment rests on "'grounds wholly irrelevant to the achievement of legitimate state objectives.'" *Id.* at 497 (quoting *State v. Thorne*, 129 Wn.2d at 771). This court found that the purpose of the persistent offender act is to protect public safety by putting the most dangerous criminals in prison and reduce the number of serious repeat offenders,

14

that the legislature's differing treatment of recidivists compared to other offenders was not irrelevant to the purpose of the act, and there was no equal protection violation. *Id.* at 498. Similarly, Division One of this court has rejected equal protection challenges to the POAA, holding "recidivists whose conduct is inherently culpable enough to incur a felony sanction are, as a group, rationally distinguishable from persons whose conduct is felonious only if preceded by a prior conviction for the same or a similar offense." *State v. Langstead,* 155 Wn. App. 448, 456-57, 228 P.3d 799 (2010). Considering this precedent, Mr. Rizo's equal protection challenge fails.

Mr. Rizo's final argument is that his constitutional right to a jury trial and proof beyond a reasonable doubt were violated when he was adjudicated a persistent offender based on prior convictions found by the court by a preponderance of the evidence.

A jury must determine any fact, other than the fact of a prior conviction, which increases the penalty beyond the standard range. *Blakely v. Washington,* 542 U.S. 296, 303-04, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004). A prior conviction does not have to be presented to a jury and proved beyond a reasonable doubt. *State v. Smith,* 150 Wn.2d 135, 141-43, 75 P.3d 934 (2003); *Almendarez-Torres v. United States,* 523 U.S. 224, 239, 118 S. Ct. 1219, 140 L. Ed. 2d 350 (1998). Instead, a sentencing court must simply find that the prior conviction exists by a preponderance of the evidence. *State v. Wheeler,* 145 Wn.2d 116, 121, 34 P.3d 799 (2001). No additional safeguards are required to prove a

15

past conviction because a certified copy of a prior judgment and sentence is highly reliable evidence. *Smith*, 150 Wn.2d at 143 (quoting *Thorne*, 129 Wn.2d at 783).

Both the United States Supreme Court and the Washington Supreme Court have rejected Mr. Rizo's argument that prior convictions must be found by a jury and proved beyond a reasonable doubt.

"Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000). *Blakely* maintained the *Apprendi* exception when it determined that most Washington aggravating factors must be submitted to a jury. *Blakely*, 542 U.S. at 301. The Washington Supreme Court recognizes that this exception confirms that prior felony convictions used to support a persistent offender sentence do not need to be proved to a jury beyond a reasonable doubt. *State v. Wheeler*, 145 Wn.2d 116, 121, 34 P.3d 799 (2001); *State v. Thiefault*, 160 Wn.2d 409, 418, 158 P.3d 580 (2007); *Roswell*, 165 Wn.2d at 193 n.5. Until such time as our Supreme Court overrules itself, this court is bound by its holding on this issue. *State v. Hairston*, 133 Wn.2d 534, 539, 946 P.2d 397 (1997).

In light of the controlling authority, this court lacks the ability to grant the relief Mr. Rizo requests.

16

No. 28932-0-III
State v. Rizo

The convictions are affirmed.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

_____
Korsmo, C.J.

WE CONCUR:


_____
Brown, J.

_____
Siddoway, J.

17