[No. 34039-5-I.   Division One.   December 11, 1995.]

THE STATE OF WASHINGTON, *Respondent*, v. JORY W. POLLARD, *Appellant*.

*Nielsen & Acosta*; and *Mark V. Watanabe*, for appellant.

*James H. Krider, Prosecuting Attorney*, and *Seth Aaron Fine, Deputy*, for respondent.

AGID, J. — Jory W. Pollard appeals his conviction for malicious harassment in violation of former RCW 9A.36.080(1)(b), contending there is insufficient evidence to uphold his conviction or, alternatively, that the statute is unconstitutionally vague. We conclude that the evidence of Pollard's repeated virulent racial remarks is sufficient to establish that the harassment was based on his victims' race and that the statute provides adequate notice of what behavior is prohibited to withstand a vagueness challenge. We therefore affirm.

## FACTS

On May 4, 1992, Johnny Durham, a 12-year-old African-American, and his friend Michael Duncan, also African-American, were in Durham's front yard. The boys saw Pollard walking down the street drunk. They whispered to each other and started giggling when they noticed Pollard's condition. Pollard crossed the road toward the boys and asked, "What are you looking at, nigger? You want to fight?" Durham replied he was not looking at Pollard. Pollard entered Durham's yard, told Durham he was going to beat him up, pushed him and called him a "nigger." Pollard then raised his fist as if to hit Durham. Durham testified he felt threatened by Pollard, who was 19 at the time and about a foot taller than Durham. Durham ran into his house and called the police. Durham's mother testified that when he ran into the house he told her someone had threatened him, pushed him and called him a "nigger." Durham's mother went outside. Pollard proceeded to call her a "nigger loving bitch." Durham's mother is Caucasian.

The police did not arrive after the first phone call. Pollard started walking down the street, making racial comments as he went. He started walking back towards the house when he saw Durham out on the sidewalk again. Durham ran home and called the police a second time. When the police arrived, a man was restraining Pollard after having pulled him out of the road so he would not be hit by a passing car. An officer asked Pollard if he had been in an altercation. In response, Pollard "yelled the initials, 'WPFFWP', which he said stood for white people for fucking white people, and began to yell about how all niggers and Mexicans should be shot." Durham walked up after Pollard was placed in the patrol car. When Pollard saw Durham, he yelled that he "should be shot, because he was black, all niggers and Mexicans should be shot." Pollard also said that his father killed black people and that he was going to kill Durham if he got out. The police observed that Pollard was very drunk.

The State charged Pollard with malicious harassment under former RCW 9A.36.080, fourth degree assault, and second degree criminal trespass. At a bench trial, Pollard testified that he got drunk while drinking beer with his cousin over several hours earlier that day. He did not remember pushing or harassing Durham, but did admit using the word "nigger" and saying that all "niggers" should be shot. After the State rested, Pollard moved for dismissal of the malicious harassment charge, claiming there was insufficient evidence to support it. The court denied the motion and found him guilty of all three offenses. Pollard appeals only his conviction for malicious harassment.

## DISCUSSION

The statute under which Pollard was convicted, former RCW 9A.36.080, provides in relevant part:

(1) A person is guilty of malicious harassment if he maliciously and with the intent to intimidate or harass another person because of, or in a way that is reasonably re-

lated to, associated with, or directed toward, that person's race, color, religion, ancestry, national origin, or mental, physical, or sensory handicap:

(a) Causes physical injury to another person; or

(b) By words or conduct places another person in reasonable fear of harm to his person or property or harm to the person or property of a third person . . .[1]

The trial court found Pollard guilty of violating subsection (b). He contends there is insufficient evidence to uphold his conviction under the statute because the State failed to prove he assaulted Durham because of his race. He argues that, at most, the evidence shows that his encounter with Durham was random and that he confronted the boys because they were ridiculing him, not because of their race. He further contends the trial court improperly considered his racist remarks following the incident in determining his guilt.

▪ Although Pollard's argument is not entirely clear, as we understand it, he is arguing that the State must prove the defendant's encounter with the victim was preplanned in order to show that the defendant chose the victim "because of" that person's race. In support of his argument he relies on *Wisconsin v. Mitchell*, 508 U.S. 476, 113 S. Ct. 2194, 124 L. Ed. 2d 436 (1993), and *State v. Talley*, 122 Wn.2d 192, 858 P.2d 217 (1993). In *Mitchell*, a group of African-American youths randomly selected and beat a white youth after discussing a movie scene in which a white man beat an African-American boy. 113 S. Ct. at

---

[1]The current version of the statute provides in relevant part:

"(1) A person is guilty of malicious harassment if he or she maliciously and intentionally commits one of the following acts because of his or her perception of the victim's race, color, religion, ancestry, national origin, gender, sexual orientation, or mental, physical, or sensory handicap:

"(a) Causes physical injury to the victim or another person;

"(b) Causes physical damage to or destruction of the property of the victim or another person; or

"(c) Threatens a specific person or group of persons and places that person, or members of the specific group of persons, in reasonable fear of harm to person or property. . . ."

2196. In *Talley*, a group of teenagers burned a cross on an African-American classmate's lawn after having discussed it at a party. 122 Wn.2d at 197. Pollard is apparently arguing that because the convictions in *Mitchell* and *Talley* were upheld on appeal, there is some requirement that the defendant's victim selection be preplanned. Pollard is correct that the defendants in *Mitchell* and *Talley* committed their crimes after some sort of preplanning or discussion. But he points to no language in these cases or the statute, and we have found none, that suggests victim preselection is a necessary element of malicious harassment.

On the contrary, in *State v. Worl*, 74 Wn. App. 605, 875 P.2d 659 (1994), *review granted*, 125 Wn.2d 1014 (1995), the court upheld a conviction for malicious harassment on facts similar to those presented here. Worl was panhandling in a supermarket parking lot when he saw Hill, an African-American, sitting in his car. Worl approached Hill and referred to him as a "Blood." Hill asked Worl if he was one and Worl responded, "No, I am not and you mother fuckers should all go back to Africa where you belong." 74 Wn. App. at 608. An altercation ensued, and Hill was seriously injured. As in this case, Worl's encounter with Hill was random, and there was no evidence that he was looking for a particular type of person to assault. Pollard has not distinguished *Worl*.

Pollard contends that unless a finding of preplanning is required, a person who merely utters a biased statement during the commission of another crime could become liable for felony harassment even though the initial crime was only a misdemeanor. Pollard is correct that the statute does not criminalize uttering biased remarks during the commission of another crime and that the State must show that the defendant selected his victim on a basis listed in the statute. *See Talley*, 122 Wn.2d at 201 (the "statute punishes the selection of the victim"). But his argument confuses the *selection* of the victim which, by definition, must be made beforehand, with the random-

ness of the *encounter* with the victim. It does not follow that, because the encounter with the victim is not planned, the defendant's selection of the victim as a target is also random. It is entirely conceivable that a person could be walking down the street, have a random encounter or confrontation with a member of a group he or she does not like and decide then and there to assault that person because of the victim's membership in the target group. That is precisely what happened here. Pollard was not merely committing a separate crime when he happened to utter a racial slur. Rather, he committed the crime after he noticed Durham's and Duncan's race.

In sum, we reject Pollard's contention that the State must produce evidence of preplanning in order to prove the crime of malicious harassment. Pollard's reading of the statute would essentially graft a requirement onto the statute that the State prove the defendant went out looking for a particular type of person to harass or intimidate, a requirement not supported by case law or statutory language.

█ The trial court summarized the testimony it relied on in finding Pollard guilty in its oral decision:

There is no doubt that the defendant, by words and conduct, placed Johnny Durham in fear of harm to his person. There is no doubt that his fear was reasonable, given the drunken demeanor of the defendant, the fact that he came clear across the street to start a fight with him, and that he was older and bigger than Mr. Durham.

The second element is whether the defendant put Mr. Durham in fear maliciously and with the intent to intimidate or harass Johnny Durham, because of, or in any way that is reasonably related to, associated with, or directed toward his race or color.

To determine whether the State has proved this beyond a reasonable doubt, let's review the testimony.

The defendant was stumbling down the street when he noticed that these young lawn mowers were looking at him

and giggling. He shouted out to them, "What are you looking at nigger? You want to fight?" They ignored him. He called them nigger another couple of times, before getting across the street and into their yard. He told them that he was going to kick their ass, said he hated niggers. He did not call Mrs. Durham a nigger, nor did he call any of the other white people around that, just Johnny and Mike.

Although there was no testimony to it, the Court observes and finds that they are black. In case the Court of Appeals thought I went off on a tangent.

In the police car, the defendant said his father had killed niggers and he would kill Johnny when he got out, said he was going to shoot him because of his race. As Johnny approached, Officer Post tried to turn the defendant around so he wouldn't see him, well, prior to that, as the officer was asking the defendant whether or not he had been in an altercation. The most obvious and recent problem that the defendant had been in was having been manhandled by Elliot. But that's not the response that he made.

Before the officer could finish asking the question, he started complaining about "the niggers." And as Officer Post was trying to get the defendant into the police car, he was trying to get to Johnny, talking about "fucking nigger-mexican," going to have him shot. The defendant says that he was so drunk that he can't remember it.

This evidence is sufficient to uphold Pollard's conviction. Evidence is sufficient to uphold a criminal conviction if, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Green*, 94 Wn.2d 216, 221, 616 P.2d 628 (1980). From the evidence set out above, a rational trier of fact could find that Pollard assaulted Durham because of his race.

In a related argument, Pollard contends the trial court erred in considering statements he made after the initial encounter with Durham to find him guilty. He argues, without any citation to authority, that these statements

had little if any value in revealing Pollard's intent towards Durham when he first approached him because the statements followed the incident upon which the conviction is based. We reject this argument because Pollard has not provided any legal basis or argument to explain why the trial court should not have considered these statements nor did he move below to exclude them. *See In re Chubb*, 112 Wn.2d 719, 726, 773 P.2d 851 (1989) (lack of a clear legal argument with cited authority is grounds for dismissing an argument on appeal).

In the alternative, Pollard contends RCW 9A.36.080 is unconstitutionally vague because it is unclear what part of the defendant's motivation in assaulting his victim that person's membership in a particular group must be. He urges us to construe the statutory language "because of" the person's race to require a showing that the victim's race was at least a substantial factor in the defendant's motive for the assault. As with his sufficiency of the evidence argument, he contends that without this requirement a person making a biased statement while committing a misdemeanor assault may be subject to a felony prosecution for malicious harassment depending on the individual sensibilities of the police, investigator, or prosecutor. He further argues that if we hold that the victim's status must be a substantial factor in the defendant's motive in committing the assault, his conviction cannot stand because racial bias played only a small role in his assault on Durham.

A statute is not impermissibly vague if it provides "both adequate notice and standards to prevent arbitrary enforcement." *Talley*, 122 Wn.2d at 212. The party challenging a statute has the burden of proving unconstitutionality beyond a reasonable doubt. 122 Wn.2d at 212. Based on the Supreme Court's recent consideration of this issue in *Talley*, we reject Pollard's argument that the statute is unconstitutionally vague without a substantial factor requirement. In that case, the court rejected a vagueness challenge to a different portion of the statute. The court

looked to the plain, ordinary meaning of the words and at the language around it. It noted that the words "because of" in ordinary usage mean "by reason of" or "on account of." 122 Wn.2d at 213. The court concluded that the statute provided "adequate notice and sufficient standards to prevent arbitrary enforcement because the average citizen can understand the proscription at hand." 122 Wn.2d at 214. We agree that, in the context of Pollard's argument here, the words "because of" are sufficiently intelligible to the average citizen to give fair notice of what the law prohibits and that the statute does not need to be clarified as he urges.

Pollard's reliance on *People v. Baker*, 35 Cal. App. 4th 1413, 25 Cal. Rptr. 2d 372 (1993), *review dismissed*, 902 P.2d 224, 45 Cal. Rptr. 2d 206 (1995), in support of his argument is misplaced. In *Baker*, the California Court of Appeal considered a similar challenge to a statute providing for enhanced sentences for felonies committed against a person "because of" his or her race, religion, or national origin when done in concert with another. 25 Cal Rptr. 2d at 375; *see* CAL. PENAL CODE § 422.75(b). The court noted that the degree to which hatred comprises the reason for the selection was not explicitly stated in the statute. It concluded, however, that

> it makes no sense to interpret "because of" to mean the statute applies only where race, color, or ethnicity is a de minimus factor in the selection process. In light of the legislative rationale behind hate crime statutes, such an interpretation would be absurd. Thus, the statute must be construed to apply when the hatred involved comprises a *substantial factor* in the selection process.

(Italics in original; citations omitted.) 25 Cal. Rptr. 2d at 378. The court concluded Baker's and his cohort's bias was a substantial factor in their selection of a victim because the evidence showed the only reason they assaulted him was because he was Mexican.

We do not think it is necessary to read a substantial factor requirement into RCW 9A.36.080. *Baker* is not persua-

sive here because the statutory scheme at issue there was a sentence enhancement provision, not a statute creating a separate substantive offense. Under our statute, the intent to harass or intimidate someone because of the person's status is an element of the crime, not an aggravating circumstance. In our view, the same potential for confusion or arbitrary convictions that concerned the *Baker* court is not present here. A sentencing enhancement provision like the one in *Baker* applies to crimes that are generally motivated by reasons other than the victim's status. For example, robbery, one of the crimes Baker was charged with, is usually motivated by the intent to take someone else's property. In a case in which the underlying crime is based on motives other than the victim's membership in an identifiable group and the State also alleges that the perpetrator chose the victim because of his or her status, a fact finder may well need the guidance of a "substantial factor" instruction to determine how much of the defendant's motive to commit the crime can be attributed to the victim's status.

Furthermore, even if we agreed with Pollard that bias must be a substantial factor in a defendant's motivation for the assault, we would nonetheless uphold his conviction because there is sufficient evidence to meet this standard. Whether or not Pollard assaulted Durham in part because he was blind drunk and insulted by the boys' ridicule, the evidence is overwhelming that he also assaulted him with the intent to intimidate and harass him because of his race. As the trial court found, Pollard's reason for assaulting Durham is clear from his statements when he first noticed the boys and approached them. The court specifically rejected Pollard's argument that he was motivated primarily by the boys' ridicule. In its oral ruling, the court noted, for example, that Pollard did not say " 'You children shouldn't laugh at drunk persons.' Nor did he say, 'You children should show more respect for your elders'. Nor did he say, 'You little punks don't laugh at me.' " Rather he chose to address them using a loaded racial epithet, persisted in using the term throughout the

encounter, told them he hated people of their race and informed the police officer who arrested him that his father had killed African-Americans and that he intended to shoot Durham because of his race when he was released. This is ample evidence that Durham's race was more than a substantial factor in Pollard's commission of the assault.

The conviction is affirmed.

BECKER and COX, JJ., concur.

Review denied at 129 Wn.2d 1011 (1996).