64 P.3d 88 (2003)
115 Wash.App. 890
STATE of Washington, Respondent,
v.
Gary Gene JOHNSON, Appellant.
No. 20858-3-III.
Court of Appeals of Washington, Division 3, Panel Three.
February 27, 2003.
Janet G. Gemberling, Attorney at Law, Spokane, WA, for Appellant.
Kevin M. Korsmo, Andrew J. Metts, III, Deputy Prosecuting Attorneys, Spokane, WA, for Respondent.
SWEENEY, J.
The malicious harassment statute criminalizes a malicious, intentional threat because of, among other things, gender, if the threat reasonably creates fear. With the most vicious, vile invectives, Gary Johnson threatened female police officer Tami Scott. The trial judge found that he did it because she was a woman. That finding is amply supported by this record and we therefore affirm the conviction.

FACTS
Spokane Transit Authority (STA) Security Officer Ray Brayman saw Mr. Johnson at the STA Plaza. Mr. Johnson had been excluded from the STA Plaza. Officer Brayman *89 called police. Spokane Police Officer Tami Scott responded. Officer Scott is a female. She arrested Mr. Johnson for his refusal to leave and for failure to comply with previous trespass orders. At first he was cooperative. But after she placed him in the patrol car, things changed.
Mr. Johnson told Officer Scott, "I'm 54 years old and this doesn't mean shit[1] to me, cunt." Report of Proceedings (RP) at 18. Mr. Johnson said that he was going to take a knife and "slit [Officer Scott] from [her] cunt to [her] throat." RP at 18. All the way to the jail, Mr. Johnson continued to threaten to cut Officer Scott in the same manner. Once they arrived at the jail, Mr. Johnson told Officer Scott that when he was released he was going to wait in the bushes until she got off duty and similarly slit her. And he said that he hoped that she died a painful death.
During the course of the contact, Mr. Johnson called the officer a "nigger lover," "butt fucker," "bitch," "whore," "slut," "cunt," and "dick sucker." RP at 20. Several times Mr. Johnson said that he would "stick" Officer Scott "from there to there." RP at 20. And he said that he knew that it would hurt. He said that he would never forget the arrest. And he hoped that the officer died a terrible death. Mr. Johnson told Officer Scott to "go fuck [herself]" with her pen. RP at 20. Officer Scott reported to booking officers at the jail that "we ha[ve] a very agitated male and that I w[ill] not be taking him out of the patrol car." RP at 20-21.
Officer Scott believed that Mr. Johnson had the ability to carry out the threats. He had one knife when arrested. And knives were cheap and easy to obtain in downtown Spokane. Mr. Johnson told her that he had nothing to lose. She did not believe that the threats were "run-of-the-mill"; Mr. Johnson peered at Officer Scott in the rearview mirror while he threatened her. RP at 31.
Mr. Johnson did not threaten Officer Brayman, a male security officer. Three weeks later when Officer Scott and a male officer served a warrant for the malicious harassment, Mr. Johnson "was very nice to [the male police officer] .... [a]nd not to [Officer Scott] at that point in time." RP at 35, 36. The male officer transported Mr. Johnson to the jail. Mr. Johnson was polite and cooperative with the male officer, referring to him as "sir" while still acting belligerently toward Officer Scott. RP at 36.
The court found Mr. Johnson guilty of malicious harassment and entered the appropriate findings of fact and conclusions of law.

DISCUSSION
FIRST AMENDMENT RIGHTS
A person is guilty of malicious harassment if he or she maliciously and intentionally ... because of his or her perception of the victim's ... gender ...:
. . . .
(c) Threatens a specific person or group of persons and places that person, or members of the specific group of persons, in reasonable fear of harm to person or property. The fear must be a fear that a reasonable person would have under all the circumstances. For purposes of this section, a "reasonable person" is a reasonable person who is a member of the victim's... gender .... Words alone do not constitute malicious harassment unless the context or circumstances surrounding the words indicate the words are a threat. Threatening words do not constitute malicious harassment if it is apparent to the victim that the person does not have the ability to carry out the threat.
RCW 9A.36.080(1).
Mr. Johnson makes a number of arguments on appeal. But primarily, he argues that the State did not show that he selected Officer Scott because of her gender. The only evidence of bias-motivated hatred was his use of a variety of profane and derogatory terms in addressing the officer. He concedes that those terms are undeniably offensive and vulgar. But, he argues, their meanings, which he provides us with,[2] do not *90 provide a basis for the trial court's finding that Mr. Johnson's "method of attack" and threats were made because Officer Scott was a woman. Appellant's Br. at 6-7.
Constitutionality. Constitutional challenges based on the First Amendment generally trigger a facial review of the challenged statute rather than an as-applied review. State v. Karas, 108 Wash.App. 692, 697 n. 1, 32 P.3d 1016 (2001) (citing State v. Carver, 113 Wash.2d 591, 599, 781 P.2d 1308 (1989); 789 P.2d 306). But here, even though First Amendment freedoms are implied, Mr. Johnson's challenge is "as applied." Appellant's Br. at 2, 8.
Mr. Johnson begins by arguing that the only evidence to support the charge is his use of profane and derogatory terms to express his disfavored views during a trespass arrest. His conviction for malicious harassment is then, he claims, an enhancement to his trespass charge based on his exercise of disfavored speech during the course of the trespass.
The malicious harassment statute has been characterized as a statute that "enhances punishment" for certain criminal conduct where the defendant chooses his victim because of the victim's membership in a protected category. State v. Talley, 122 Wash.2d 192, 201, 858 P.2d 217 (1993). Malicious harassment is, however, clearly a separate substantive crime and not merely a sentence enhancement like a deadly weapon enhancement. State v. Robertson, 88 Wash. App. 836, 845-46, 947 P.2d 765 (1997); State v. Worl, 74 Wash.App. 605, 613-14, 875 P.2d 659 (1994), rev'd on other grounds, 129 Wash.2d 416, 918 P.2d 905 (1996); State v. Pollard, 80 Wash.App. 60, 70, 906 P.2d 976 (1995).
The malicious harassment statute criminalizes the act of malicious and intentional threatswith the apparent ability to carry out the threatto a female because of her gender if the threats place her in fear of harm. Proof that the accused committed a prohibited act "because of" the victim's membership in a protected category is characterized as the element of "victim selection." Pollard, 80 Wash.App. at 64-65, 906 P.2d 976. The nexus between criminal conduct and bigoted thought is proof of victim selection conduct, not speech. Talley, 122 Wash.2d at 199-206, 858 P.2d 217; Worl, 74 Wash.App. at 610-11, 875 P.2d 659. A person may not be convicted of uttering biased remarks during the commission of another crime without proof that the victim was selected on an impermissible basis, here gender. Pollard, 80 Wash.App. at 65, 906 P.2d 976. Statements and actions are circumstantial evidence of victim selection. State v. Lynch, 93 Wash.App. 716, 722, 970 P.2d 769 (1999).
The trier of fact need not weigh the extent to which bias played a role in the commission of the crime. Pollard, 80 Wash. App. at 68-70, 906 P.2d 976. The Pollard case rejects the argument that the statute is unconstitutionally vague unless the State shows that the victim's protected status is a "substantial factor" motivating the defendant's conduct. Id. Nor is it necessary to show preplanning of the encounter to prove impermissible victim selection. Id. at 64-66, 906 P.2d 976. A spontaneous decision to assault someone because of the victim's membership in the targeted group is still malicious harassment. Id.
RCW 9A.36.080(1) is not unconstitutional as applied to Mr. Johnson if the State *91 shows that he chose Officer Scott because of her gender. It does not matter that Mr. Johnson did not initiate the contact with her.
Standard of Review. The trial judge had to weigh the evidence here. So our review is limited to whether substantial evidence supports his findings. And if it does, then whether the findings support the conclusions of law. In re Det. of A.S., 91 Wash. App. 146, 162, 955 P.2d 836 (1998), aff'd, 138 Wash.2d 898, 982 P.2d 1156 (1999). Substantial evidence is a sufficient quantity of evidence in the record to persuade a fair-minded, rational person of the truth of the finding. State v. Hill, 123 Wash.2d 641, 644, 870 P.2d 313 (1994).
Findings of Fact. The pertinent findings here are:
 Mr. Johnson loudly called Officer Scott a "`cunt'" while riding in her patrol car. CP at 9.
 At other times during the encounter, Mr. Johnson called Officer Scott a "`nigger lover, butt fucker, bitch, whore, slut, cunt and a dick sucker.'" CP at 9.
 Mr. Johnson said numerous times that he was going to "`slit Officer Scott from her cunt to her throat.'" CP at 9.
 Mr. Johnson said that he would never forget his encounter with her and that she would die a horrible death.
 Upon being advised of the charge, he told Officer Scott to "`go fuck herself with her pen.'" CP at 9.
 Three weeks after the initial encounter, when Officer Scott and a male officer picked up Mr. Johnson on an arrest warrant, he referred to a male officer as "sir" and the male officer had no problems with Mr. Johnson while transporting him to jail.
 There were "no threats or obstreperous remarks" made toward the STA security officer at the time of Mr. Johnson's initial arrest at STA Plaza. CP at 10.
These findings are not challenged. They are therefore verities on appeal. Hill, 123 Wash.2d at 644, 870 P.2d 313; State v. Stenson, 132 Wash.2d 668, 697, 940 P.2d 1239 (1997).
Mr. Johnson challenges the court's conclusions (1) that Mr. Johnson's threats were motivated by Officer Scott's gender rather than her status as a police officer, and (2) that Mr. Johnson threatened to kill Officer Scott and mutilate her sexual organs because she is a woman. Appellant's Br. at 6, 7; see CP at 11.
But Mr. Johnson's motive for saying the things he said to Officer Scott is a question of fact. And in deciding that question the court relied on a bit of the legislative history for this crime:
"[H]atred towards gender as a class is the predominant factor to consider. Other factors to consider include the perpetrator's use of language, slurs, or symbols expressing hatred towards the victim's gender as a class; the severity of the attack including [the] mutilation of the victim's sexual organs;... a lack of provocation; absence of any other apparent motivation; or common sense."
CP at 9 (quoting RCW 9A.36.078). The court found that Mr. Johnson's threats to kill Officer Scott and to mutilate her sexual organs were motivated by his gender bias. That finding is amply supported by this record.
His slurs and threats were circumstantial evidence of the bias which is the foundation for this hate crime. And his invective was not improperly parsed, as he suggests, to give more meaning to the applicable slurs. The court did not improperly disregard the slurs that did not apply to the elements of the offense in this case. See RCW 9A.36.080(4) ("Evidence of expressions or associations of the accused may not be introduced as substantive evidence at trial unless the evidence specifically relates to the crime charged.").
The court's determination that Mr. Johnson threatened to mutilate Officer Scott's sexual organs is supported by substantial evidence. Officer Scott testified and the court entered an unchallenged finding that Mr. Johnson stated that "he would `slit Officer Scott from her cunt to her throat.'" CP at 9. Mr. Johnson argues that because this threat is one of disembowelment rather than mutilation of female genitalia it is not supported by substantial evidence. A fair-minded, *92 rational person could easily conclude otherwise.
Mr. Johnson next argues that his invective was varied in its wide array of insults, only a portion of which could be described as misogynistic. There was then insufficient proof that his threats were made "because of" gender. He says the evidence simply shows that he was upset about being arrested. But the evidence before the court and unchallenged findings show that Mr. Johnson did not hurl abuse at the male STA officer at the time of the incident. His abuse was directed only toward Officer Scott. Mr. Johnson claims that his reaction was triggered by being placed in the police car by Officer Scott. He did not visit the same abuse upon the male officer when he was placed in the police car three weeks later by a male officer.
Mr. Johnson's wide varying slurs may reflect his numerous and assorted biasesincluding those concerning race, gender, sexual orientation, and various sexual practices. But this does not dilute the basis for the court's ultimate finding that his threats were motivated by gender bias. The terms identified by the court as indicators of gender hatred are amply supported. See RCW 9A.36.078 (use of language and slurs expressing hatred toward the victim's gender as a class as well as threat of genitalia mutilation are indicators of a hate crime committed because of gender); Lynch, 93 Wash.App. at 722, 970 P.2d 769 (statements and actions of the accused may be used as circumstantial evidence of victim selection).
It was the trial judge's job to weigh the persuasiveness of the evidence. State v. Lubers, 81 Wash.App. 614, 619, 915 P.2d 1157 (1996). At issue here was the motivation for Mr. Johnson's conduct. He denied it was gender. According to the trier of fact, the State proved that it was. And credibility was for the trier of fact. State v. Camarillo, 115 Wash.2d 60, 71, 794 P.2d 850 (1990).
We affirm this conviction.
WE CONCUR: BROWN, C.J., and SCHULTHEIS, J.
NOTES
[1] The language here is stunning. It is shocking aside from the legal consequences which may flow from it. We have, nonetheless, elected to include it all since it does drive the legal analysis.
[2] Using RICHARD A. SPEARS, FORBIDDEN AMERICAN ENGLISH (1990), Mr. Johnson defines the words he used:

nigger-lover: "someone, always a nonblack, who supports blacks and causes that favor blacks." SPEARS, supra, at 126.
butt fuck: "someone who practices pederasty. He looks like a choir-boy, but he's a butt-fuck from way back. ... a disliked and annoying person. (Usually a male ....)" Id. at 4-5.
bitch: "an unpleasant or irritating female. (... Intended and perceived as derogatory. Very common and used by both sexes. Also a term of address.)" Id. at 17.
whore: "a prostitute. (Usually, but not necessarily, a female....)" Id. at 197.
slut: "a sexually free woman who will copulate with anyone." Id. at 172.
dick-sucker: "a male who performs fellatio.... They say he's a dick-sucker, but who would really know? ... a low and despicable male; a male who is despicable enough to perform fellatio." Id. at 51.
cunt: "women considered as nothing more than a receptacle for the penis; a wretched and despised woman ... a wretched and disgusting male." Id. at 45.