**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

| | | |
|---|---|---|
| RAVEN LANG BREALAN, | ) | No. 80249-6-I |
| | ) | |
| Appellant, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| STATE OF WASHINGTON, | ) | |
| | ) | UNPUBLISHED OPINION |
| Respondent. | ) | |
| | ) | |

MANN, C.J. — Raven Brealan appeals his conviction for malicious harassment—a hate crime, under RCW 9A.36.080(1). He argues that the trial court erred by denying his request for a jury instruction on voluntary intoxication. Because the trial court did not abuse its discretion when it determined that Brealan's intoxication did not affect his ability to think and act with malice, we affirm.

I.

On the evening of September 17, 2011, Alex McNeill and Michael Mackay were planning to attend a dance party in Seattle's Capitol Hill neighborhood. McNeill and Mackay were wearing apparel and accessories that the State suggested could have been perceived to imply their sexual orientation. Both men are gay. En route to the

party, McNeill and Mackay happened upon two of McNeill's women friends. Mackay described them as "butch," having short hair, wearing what he described as "masculine clothing," and he thought they had just come out of the Wild Rose—an establishment he identified as a lesbian bar.

While McNeill and his friends conversed, Brealan, who was sitting on a nearby bench, told them to "[c]ut that faggot shit out." McNeill admonished Brealan, saying that he "should think about where [he is] before [he] say[s] stuff like that." This statement angered Brealan, who stood up from his seat and began to approach McNeill. As Brealan approached McNeill, Mackay stepped between them. Brealan punched Mackay twice in the face. Both McNeill and Mackay called 911. Mackay followed Brealan as he tried to flee the scene.

As he retreated, Brealan yelled phrases at Mackay such as "bounce, faggot" and "I'll cut you, faggot." While Mackay spoke to the 911 operator, Brealan struck Mackay in the head with a "no parking" sandwich board sign. Responding police officers arrived on the scene and located Brealan hiding in nearby bushes. Once detained, Brealan repeatedly told officers that he was "not a faggot," and that he was upset that earlier he had kissed someone that he thought was a woman but turned out may have been a man. The police arrested Brealan. The State charged Brealan with malicious harassment.

At trial, evidence demonstrated that Brealan was intoxicated during the September 17 altercation. McNeill testified that Brealan was slurring his words and was "obviously drunk." Mackay described Brealan as "stumbling about, disoriented," and noting that he "looked very much . . . intoxicated." Arresting officers did not note

Brealan's intoxication in the police report, but the trial court noted Brealan was slurring his words during the police recording. The trial court found that Brealan's fixation on the earlier incident in the evening rather than talking about the incident that caused the police to have contact with him, as well Brealan waiving his Miranda[1] rights, were strong indicators of intoxication.

Brealan proposed a voluntary intoxication instruction, which read "[n]o act committed by a person while in a state of voluntary intoxication is less criminal by reason of that condition. However, evidence of intoxication may be considered in determining whether the defendant acted with malice." The trial court denied this instruction.

The jury convicted Brealan as charged. Consistent with Brealan's offender score, the court imposed a statutory maximum sentence of 60 months. See RCW 9A.36.080(7); RCW 9A.20.021; RCW 9.94A.506. Brealan appeals.

II.

Brealan argues that the trial court erred by not granting a voluntary intoxication jury instruction. We disagree.

Our review of a trial court's refusal to give an instruction depends on whether the decision was based on a matter of law or fact. We review the trial court's refusal to give an instruction based on a ruling of law de novo. We review a trial court's refusal to give an instruction based on a factual dispute for abuse of discretion. State v. Walker, 136 Wn.2d 767, 771-72, 966 P.2d 883 (1998).

---

[1] Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

To demonstrate entitlement to a voluntary intoxication jury instruction, the defendant must show (1) that the crime requires a particular mental state; (2) substantial evidence of drinking; and (3) that the drinking affected the defendant's ability to acquire the required mental state. State v. Gallegos, 65 Wn. App. 230, 238, 828 P.2d 37 (1992).

The State acknowledges that the first element is satisfied as a matter of law because malicious harassment requires the mental state of malice and intent. See RCW 9A.36.080(1) ("A person is guilty of a hate crime if he or she maliciously and intentionally commits one of the following acts.").

The second element, "substantial evidence of drinking," is a question of fact, thus calling for an abuse of discretion standard of review. Walker, 136 Wn.2d at 771-72. The trial court determined that there was substantial evidence to demonstrate Brealan was intoxicated. We agree. McNeill described Brealan as "obviously drunk," and talking loudly with slurred speech. Mackay similarly testified he believed Brealan was intoxicated because he acted so erratically and stumbled as he ran away. While neither responding officer wrote in their report that Brealan was under the influence alcohol, they both testified that he was under the influence. The trial court did not abuse its discretion when it determined that there was substantial evidence of drinking.

The parties appear to agree that the third element, "that the drinking affected the defendant's ability to acquire the required mental state," is likewise factual and reviewed for an abuse of discretion. Walker, 136 Wn.2d at 767, 771-72.

Under RCW 9A.36.080(1)(a), "[a] person is guilty of a hate crime offense if he or she maliciously and intentionally commits one of the following acts because of his or her

-4-

perception of the victim's [sexual orientation]." "'Malice' and 'maliciously' shall import an evil intent, wish or design to vex, annoy, or injure another person." RCW 9A.04.110(12). The hate crime statute is not aimed at speech, but "aimed at criminal conduct and enhances punishment for that conduct where the defendant chooses his or her victim because of their perceived membership in a protected category." State v. Talley, 122 Wn.2d 192, 201, 858 P.2d 217 (1993). Thus, "[a] person may not be convicted [simply for] uttering biased remarks during the commission of another crime. State v. Johnson, 115 Wn. App. 890, 896, 64 P.3d 88 (2003). Instead, a hate crime must rest on proof that the defendant selected the victim because of the victim's apparent membership in the protected class. Johnson, 115 Wn. App. at 896.

The defendant's conduct does not, however, need to be preplanned. As we explained in State v. Pollard, 80 Wn. App. 60, 66, 906 P.2d 976 (1995), "[i]t is entirely conceivable that a person could be walking down the street, have a random encounter or confrontation with a member of a group he or she does not like and decide then and there to assault that person because of the victim's membership in the target group." Further, "[a] spontaneous decision to assault someone because of the victim's membership in the targeted group is still malicious harassment." Johnson, 115 Wn. App. at 896.

Brealan argues that the trial court erred by concluding that "evil intent" is not

susceptible to impairment by intoxication.  While we largely agree with Brealan's statement of the law, we disagree that the trial court erred in its ruling.[2]

The trial court first addressed whether the evidence showed that alcohol impaired Brealan's ability to form basic intent relying on State v. Gabryschak, 83 Wn. App. 249, 921 P.2d 549 (1996).  In Gabryschak, the defendant, convicted of felony harassment and third degree malicious mischief, appealed the denial of a voluntary intoxication instruction.  83 Wn. App. at 252.  The court determined that there was ample evidence Gabryschak was intoxicated at the time of his crimes.  Gabryschak, 83 Wn. App. at 254.  Even so, the court did not find "evidence on the record from which a rational trier of fact could reasonably and logically infer that Gabryschak was too intoxicated to be able to form the required level of culpability to commit the crimes with which he was charged."  Gabryschak, 83 Wn. App. at 254.  The record revealed that the defendant refused to let officers into his home and then attempted to run from the police while being escorted to their vehicle, showing the defendant's understanding of his situation with the police.  Gabryschak, 83 Wn. App. at 251, 254-55.  We affirmed the refusal to give a voluntary intoxication instruction because the evidence did not reasonably connect Gabryschak's intoxication with the asserted inability to form the required level of culpability to commit the crimes charged.  Gabryschak, 83 Wn. App. at 252-53, 255.

Like Gabryschak, the trial court here determined that, although substantial evidence showed that Brealan was intoxicated, this evidence was insufficient to establish that Brealan's level of intoxication would prevent him from forming the

---

[2] We disagree with Brealan's assertion that malice requires premeditation.  This court has rejected a requirement for premeditation.  See Pollard, 80 Wn. App. at 66; Johnson, 115 Wn. App. at 896.

requisite mental state of intent and malice. The trial court first found the evidence demonstrated Brealan had the cognitive ability to form intent. Brealan "was able to follow the directions of the police officer, come out from the bushes when told to do so, . . . [follow] other directions, . . . try and flee the scene, to try and hide himself in the bushes." The evidence, like the evidence presented in Gabryschak, strongly suggested that Brealan's level of intoxication did not impair his ability to form intent

The trial court next addressed whether Brealan's intoxication interfered with his cognitive ability to form malice. The trial court determined that it did not, explaining:

> There is a theory that he—while he may have had an intent to injure—at least an intent to touch Mr. Mackay, and even an intent to injure him, that it was not motivated by hatred, and, of course, I think that's the argument for the giving the lesser of the included, but there's really nothing to show that the intoxication interfered with his ability to form a hatred for the victim. And, in fact, it would seem to be actually counterintuitive to suggest that, because generally bias and feelings of antipathy toward people based on their orientation or their race or so forth is not made in a moment, it's not made while you're intoxicated, it's a product of, one would assume, that something you have as a feeling you've developed over some time.
>
> So while intoxication may make you act differently than you normally act, and it may also cause you to say things that you may feel but don't normally express or even know that you feel, it doesn't—there's no logical connection between being intoxicated and unable to form a feeling or attitude of hatred. It just doesn't really follow.

The trial court's focus on whether Brealan's intoxication made him unable to form a feeling or attitude of hatred was incorrect. The question is not whether the intoxication impaired his ability to feel "hatred" toward his victim, but whether the intoxication impaired his ability to select his victim because of the victim's apparent membership in the protected class. Johnson, 115 Wn. App. at 896. There is no evidence that it did. In fact, Brealan's own words demonstrate that he deliberately chose to confront Mackay

and his friends because of their sexual orientation. He wasn't merely yelling out generalized comments about gays and lesbians. He explicitly ordered Mackay and his friends to "[c]ut that faggot shit out," before punching Mackay in the face, and then repeatedly yelled homophobic slurs at Mackay before striking him in the head with the sandwich board. He directed his slurs at Mackay and his friends, and did so in a way that indicates he selected the victim because of the victim's apparent membership in the protected class. Johnson, 115 Wn. App. at 896. Thus, while the trial court's analysis was incorrect, its conclusion was correct.[3]

Affirmed.

_Mann, C.J._

WE CONCUR:

_____          _Andrus, A.C.J._

---

[3] We may affirm the trial court's ruling on any basis supported by the record. State v. Streepy, 199 Wn. App. 487, 500, 400 P.3d 339 (2017) (citing State v. Norlin, 134 Wn.2d 570, 582, 951 P.2d 1131 (1998)).