**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

| | |
|---|---|
| STATE OF WASHINGTON, | DIVISION ONE |
| Respondent, | No. 80986-5-I |
| v. | UNPUBLISHED OPINION |
| JASON LEIGH SKYTA, | |
| Appellant. | |

DWYER, J. — Jason Skyta appeals from the judgment entered on a jury's verdict finding him guilty of malicious harassment.[1]  He contends that the prosecutor engaged in misconduct during closing argument by telling the jury that the use of a racial slur, as a matter of law, satisfied the victim selection element of malicious harassment.  He also appeals his sentence, asserting that his offender score must be recalculated in light of State v. Blake, 197 Wn.2d 170, 481 P.3d 521 (2021).  We agree that Blake requires us to remand for resentencing, but otherwise affirm.[2]

I

On June 27, 2019, Jason Skyta and Charlie Brown encountered each other in the lot at which Brown lived and worked in his recreational vehicle (RV).  Brown stepped out of the RV and had a verbal exchange with Skyta.  This

_____

[1] A statutory amendment has recently renamed this offense as "hate crime offense." RCW 9A.36.080(1)(c).

[2] By an order dated May 10, 2021, we previously announced this resolution.  This opinion explains our reasoning.

exchange became heated and ended with Brown calling 911 as he chased Skyta to a nearby Lowe's hardware store.

Skyta and Brown quite differently described that which took place during the encounter.

Skyta testified that he asked Brown if he needed any workers and that Brown responded by telling him to "'Get outta my alley.'" According to Skyta, the two men then argued for a couple of minutes, during which time Brown physically approached Skyta who responded by telling Brown to "'back off.'" Skyta testified that he left the lot after Brown went back to his RV. Later on, he realized that he was being followed and ran into the Lowe's store.

On the other hand, Brown testified that when he first emerged from his RV, Skyta was "stooping down and digging in his bag." Brown testified that Skyta looked at him and said, "'What the fuck are you looking at? I'll cut your fucking neck off, nigger,'" and "'I'll burn your fucking place down, nigger,'" while pulling a large knife out of his backpack. Brown testified that he responded by telling Skyta, "'Today you're going to jail,'" and chased him while he called 911.

The State charged Skyta with malicious harassment, committed while armed with a deadly weapon.

The jury was given the following instruction, setting forth the elements of malicious harassment:

> To convict the defendant of the crime of malicious harassment, each of the following elements must be proved beyond a reasonable doubt:

2

(1) That on or about the 27th day of June, 2019, the defendant threatened a specific person;

(2) That the defendant placed that person in reasonable fear of harm to person or property;

(3) That the defendant acted because of the defendant's perception of the person's race, color, relation, ancestry, or national origin;

(4) That the defendant acted maliciously and intentionally; and

(5) That this act occurred in the State of Washington.

If you find from the evidence that each of these elements has been proved beyond a reasonable doubt, then it will be your duty to return a verdict of guilty.

On the other hand, if, after weighing all of the evidence, you have a reasonable doubt as to any one of these elements, then it will be your duty to return a verdict of not guilty.

See RCW 9A.36.080(1)(c).

During his closing argument, the prosecutor urged the jury that to find that the third element had been proved "if you believe that the defendant threatened to chop off Mr. Brown's head or cut his neck followed by using the word 'nigger.'" He then explained the State's theory of the case, asserting that:

There is absolutely no reason for the defendant to have used that language other than because of his perception of his race, his color, his national origin. It is not a word that is said lightly. It is not a word that most people say at all.

Really, the question is whether or not it was said at all. If you believe that it was said as Mr. Brown put to you, then the third element has most certainly been met beyond a reasonable doubt as required.

A thought experiment, perhaps. If Mr. Brown was, in fact, a white man, would the defendant have used the same language in threatening him? The answer is almost certainly no.

3

The jury found Skyta guilty of malicious harassment.  The jury also found by special verdict that Skyta was armed with a deadly weapon at the time of the offense.

At sentencing, the trial court determined Skyta's offender score as 2, resulting in a standard term of incarceration of 12 to 14 months.  RCW 9.94A.030(55), .510, .515, .525(7).  Skyta's offender score was calculated as including a prior conviction for "VUCSA [Violation of the Uniform Controlled Substances Act] – Possession."  The court imposed a standard range sentence of 12 months of incarceration as well as a mandatory 6 month enhancement, as required by the special finding that Skyta was armed with a deadly weapon at the time of the offense.  Thus, Skyta was sentenced to 18 months of total confinement.

II

Skyta contends that the prosecutor engaged in misconduct by misstating the law, and thus lowered the State's burden of proof during closing arguments.  This is so, Skyta argues, because the prosecutor wrongfully stated that the victim selection element of the crime had been met as a matter of law if the jury found that Skyta uttered the racial slur at issue.  The State counters that, when viewed in the context of the entire argument, the prosecutor did not misstate the law.  Moreover, the State avers that any such misconduct does not warrant reversal because any prejudice caused to the defendant could have been cured by an appropriate curative instruction.

To prevail on a claim of prosecutorial misconduct, a defendant must prove that the conduct was both improper and prejudicial to the defendant. State v. Fisher, 165 Wn.2d 727, 747, 202 P.3d 937 (2009). For conduct to be prejudicial, there must be "a substantial likelihood the misconduct affected the jury's verdict." State v. Brown, 132 Wn.2d 529, 561, 940 P.2d 546 (1997). A prosecutor has wide latitude to draw and express reasonable inferences from the evidence in closing argument to the jury. State v. Boehning, 127 Wn. App. 511, 519, 111 P.3d 899 (2005). However, a prosecutor engages in misconduct by misstating the law during closing argument. State v. Allen, 182 Wn.2d 364, 373, 341 P.3d 268 (2015). Nevertheless, such claimed transgressing statements cannot be analyzed in isolation. Instead, they must be "reviewed in the context of the total argument, the issues in the case, the evidence addressed in the argument, and the instructions given to the jury." Brown, 132 Wn.2d at 561.

When the defendant fails to object at trial or to request a curative instruction, the claim of misconduct is waived unless the alleged misconduct was flagrant and ill-intentioned and an instruction could not have cured the resulting prejudice. Fisher, 165 Wn.2d at 747. Our Supreme Court has recognized that an improper statement of the burden of proof may be effectively remedied by an appropriate curative instruction. State v. Warren, 165 Wn.2d 17, 28, 195 P.3d 940 (2008). Here, Skyta failed to object at trial. Accordingly, his claim of misconduct is waived unless the misconduct at issue was flagrant and ill-intentioned and no curative instruction could have cured the resulting prejudice.

The prosecutor's argument to which Skyta now assigns error was:

> [I]f you believe that the defendant threatened to chop off Mr. Brown's head or cut his neck followed by using the word "nigger," then that element has been – has been met.
>
> There is absolutely no reason for the defendant to have used that language other than because of his perception of his race, his color, his national origin. It is not a word that is said lightly. It is not a word that most people say at all.
>
> Really, the question is whether or not it was said at all. If you believe that it was said as Mr. Brown put to you, then the third element has most certainly been met beyond a reasonable doubt as required.
>
> A thought experiment, perhaps. If Mr. Brown was, in fact, a white man, would the defendant have used the same language in threatening him? The answer is almost certainly no.

Citing State v. Johnson, 115 Wn. App. 890, 896, 64 P.3d 88 (2003), Skyta asserts that this argument misstates the law by implying that the use of a racial slur is, by itself, sufficient to satisfy the victim selection element of malicious harassment. To be sure, while the use of a racial slur may be evidence of race-based victim selection, it does not alone establish that element of the crime as a matter of law. Johnson, 115 Wn. App. at 896.

However, the prosecutor's statements should not be considered in isolation. Instead, they must be "reviewed in the context of the total argument, the issues in the case, the evidence addressed in the argument, and the instructions given to the jury." Brown, 132 Wn.2d at 561. The prosecutor made the challenged argument during the same closing argument in which the prosecutor twice acknowledge that he had to prove that Skyta threatened Brown because of Skyta's perception of Brown's race.

6

> We're all here today and yesterday because the defendant, Jason Skyta, put Mr. Brown in reasonable fear of harm based on his perception of Mr. Brown's race.
>
> . . . .
>
> The rub in this case is whether or not the defendant threatened Mr. Brown; whether or not, by doing so, he placed Mr. Brown in reasonable fear of harm to person or property; and that he did so because of his perception of the -- of Mr. Brown's race, color, ancestry, or national origin.

Taken in context, the prosecutor did not misstate the law. With regard to the alleged utterances containing the racial slur, the prosecutor correctly pointed out the State's obligation to prove (1) that Skyta uttered the words attributed to him by Brown, (2) that the utterances contained threats, and (3) that the utterances were motivated by Skyta's perception of Brown's race. This was entirely proper.

Also proper was the prosecutor's invocation of inferences from the evidence to support his argument. State v. Stenson, 132 Wn.2d 668, 727-78, 940 P.2d 1239 (1997). It was perfectly allowable for the prosecutor to point out to the jury that the evidence in the case was absent of any explanation for Skyta's use of such slurs other than racial animus. It was for the jury to determine whether Skyta uttered the remarks, whether the remarks contained threats, and why the remarks were made. The prosecutor never argued otherwise.

In addition, Skyta does not show that any prejudice resulting from the challenged argument could not have been cured by an appropriate jury instruction. Had Skyta objected, the trial court could have advised the jury of the

controlling legal principles. There is no reason to conclude that the jury would not have followed such an instruction. Warren, 165 Wn.2d at 28.

Both because an instruction could have cured any prejudice caused by the prosecutor's statements and because the prosecutor's argument, considered in context, was not improper, Skyta's claim fails.

III

Skyta also contends that his attorney's failure to object to the aforementioned statements constituted constitutionally ineffective assistance of counsel. We disagree.

To establish ineffective assistance, the defendant must show that (1) counsel's performance was deficient, and (2) the deficient performance prejudiced the defense. State v. Grier, 171 Wn.2d 17, 32-33, 246 P.3d 1260 (2011) (quoting Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed .2d 674 (1984); State v. Thomas, 109 Wn.2d 222, 225-26, 743 P.2d 816 (1987)). "Deficient performance is that which falls below an objective standard of reasonableness." State v. Weaville, 162 Wn. App. 801, 823, 256 P.3d 426 (2011). There is a "strong presumption that counsel's performance was reasonable." State v. Kyllo, 166 Wn.2d 856, 862, 215 P.3d 177 (2009). As long as "counsel's conduct can be characterized as legitimate trial strategy or tactics, performance is not deficient." Kyllo, 166 Wn.2d at 863. Whether to object or not is a classic example of a tactical decision. Accordingly the "decision not to object during summation is within the wide range of permissible professional legal conduct." In re Pers. Restraint of Davis, 152 Wn.2d 647, 717, 101 P.3d 1 (2004).

8

"Even the best criminal defense attorneys would not defend a particular client in the same way." Strickland, 466 U.S. at 689.

At trial, defense counsel argued that Skyta did not and never would call someone the "N word." Thus, it was a conceivable legitimate trial tactic not to object to the prosecutor's statements. In her closing arguments, defense counsel framed the issue as not about "whether or not it is okay to threaten somebody, to threaten to cut somebody's head off or cut their neck or cut them in any way while using the N word, because Jason didn't do those things." Objecting to the argument now challenged on appeal might have undermined the defense theory of the case given that such an objection would have been inconsistent with the defense position that Skyta did not say these things at all.

Thus, Skyta fails to demonstrate that his counsel was constitutionally ineffective.[3]

IV

Finally, Skyta asserts, and the State concedes, that he is entitled to be resentenced because his offender score included a conviction for unlawful possession of a controlled substance. We agree and accept the State's concession.

In State v. Blake, our Supreme Court held that Washington's strict liability drug possession statute, RCW 69.50.4013(1), violates the state and federal due process clauses and is therefore void. 197 Wn.2d at 195. A conviction based on

---

[3] Moreover, such an objection would have been futile, given our determination that the challenged argument was a proper argument. A lawyer is not ineffective for failing to advance a futile argument. Strickland, 466 U.S. at 691.

an unconstitutional statute cannot be considered in calculating an offender score. State v. Ammons, 105 Wn.2d 175, 188-89, 713 P.2d 719, 718 P.2d 796 (1986). "Moreover, a sentence that is based upon an incorrect offender score is a fundamental defect that inherently results in a miscarriage of justice." In re Pers. Restraint of Goodwin, 146 Wn.2d 861, 868, 50 P.3d 618 (2002). Accordingly, Skyta is entitled to be resentenced because his offender score was improperly calculated. We therefore remand for resentencing.

Affirmed in part, reversed in part, and remanded.

_____
Dwyer, J.

WE CONCUR:

_____        _____
Coburn, J.                     Appelwick, J.