IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON\
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 36601-4-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| GERALD ANTHONY BROWN, | ) | |
| | ) | |
| Appellant. | ) | |

FEARING, J. — The trial court convicted Gerald Brown of five crimes based on one entry into his victims' home. He asks that we vacate three of those convictions based on double jeopardy principles. We grant his wish in part and vacate two convictions.

## FACTS

The many charges filed against Gerald Brown arise from a ten minute uninvited excursion into the Ellensburg apartment of Patrick West and Bruin Duke. On an autumn day, West and Duke invited friends to their residence to mark West's birthday. Duke ordered the ubiquitous pizza for the celebration and pre-paid with his debit card. Minutes later before guests arrived, Duke and West heard a knock on their door.

Patrick West opened the apartment door and was immediately struck in the right temple, by a short white male he recognized as "Christian," with a baseball bat. Report of Proceedings (RP) at 107. The white male entered the home. West collapsed onto a couch while holding his head. A tall black male, later identified as Gerald Brown, also entered the apartment, approached Bruin Duke, who sat on another couch, and swung a bat at Duke. Duke shielded his head with his arm, and his left triceps suffered the blow from the swat. Brown then punched Duke in the face, breaking his glasses and bruising his eye. Brown clutched a knife from the coffee table and threatened Duke: "'You better be cool.'" RP at 27.

After assailing Patrick West and Bruin Duke, Gerald Brown and the shorter Caucasian male ransacked the apartment and stuffed personal property into bags. Brown took possessions from the coffee table, while his associate purloined items from the kitchen. Brown and his companion alternated raiding West's bedroom, while the other stood guard over West and Duke. The pair of intruders seized marijuana, cash, machetes, and West's .22 single shot rifle from the apartment.

While collecting Patrick West's possessions, Gerald Brown told Bruin Duke that he and his colleague were robbing them because Duke and West sold marijuana in "their territory," which was Sureño turf. RP at 28-29. Brown asserted that Duke and West must pay a tax. Brown also suggested that Duke and West sell cocaine instead of marijuana, because cocaine reaped a higher income. Brown supplied West with his

Snapchat account username and volunteered to assist in marketing cocaine. During the conversation, Brown identified himself as "G.A." RP at 35, 144.

While Gerald Brown and his cohort remained inside the apartment, a Domino's Pizza deliverer knocked on the apartment's outside door. Brown politely answered the door, collected the pizza, and shielded the deliverer's view of the interior of the apartment. After the deliverer left the premises, Brown's colleague conveyed personal property from the apartment to a car, while Brown guarded Bruin Duke and Patrick West. Before fleeing the apartment, Brown warned West not to contact the police or he would kill West and Duke. Brown also informed West and Duke that he would return in a month to collect the tax again. Brown and his associate took the pizza with them. Duke immediately exited the apartment to seek assistance at a friend's house.

Patrick West's neighbor, Daniel Olsen, saw Gerald Brown and Brown's companion standing outside West's apartment, while Olsen walked his dog. Olsen later described the men as a white guy with a beanie and a tall black male. The white man carried a baseball bat. As Brown and his collaborator entered West's apartment, Olsen returned inside his apartment and surveyed the ongoing events. Olsen observed the tall black male with West's .22 single shot rifle hidden under his coat. He viewed the two intruders enter a Ford Escape and escape from the apartment complex. Olsen went to Brown's apartment. At Olsen's urging, West called for emergency assistance. An

ambulance rushed West to Harborview Medical Center in Seattle. Doctors diagnosed West with a concussion, an epidural hematoma, and a hairline skull fracture.

Late the night of the attack, Patrick West and Bruin Duke texted their friends in an attempt to identify the assailants. A friend suggested that "GA" could be Gerald Brown. Clerk's Papers (CP) at 51. West and Duke searched for Brown on Facebook and, when spotting Brown's photo on Facebook, recognized him as one of the tax collectors.

Patrick West and Bruin Duke waited to contact law enforcement. West recuperated in Mount Vernon after his release from the hospital and days later, at his family's request, reported the attack to the Ellensburg Police Department. Duke, who in the meantime remained in the apartment by himself, also contacted the Ellensburg Police Department after he received a threatening Snapchat message from a person he deemed to be the Caucasian assailant.

After interviewing Bruin Duke and Patrick West, law enforcement presented the men with photographs. Both men identified Gerald Brown, as an attacker, in one of the photos. The neighbor, Daniel Olsen, also recognized, in a photo montage, Brown as a person he saw outside the apartment. Olsen could not identify the white man in any of the photographs.

PROCEDURE

The State of Washington charged Gerald Brown with six crimes: (1) first degree burglary, (2) first degree robbery, (3) theft of a firearm, (4) second degree assault for the

attack on Duke, (5) second degree assault for the attack on West, and (6) third degree theft of other purloined property, including the pizza. The State employed the assaults on Duke and West as the predicate crimes to raise the robbery charge to the level of first degree.

Gerald Brown waived his right to a jury trial and proceeded to a bench trial. The trial court acquitted Brown on the charge of second degree assault of Patrick West due to West's testimony that the white male, not Brown, struck him with the baseball bat. The trial court convicted Brown of the remaining five counts.

At sentencing, the trial court rejected Gerald Brown's request for a drug offender sentencing alternative and imposed a mid-range sentence of 150 months based on an offender score of 9. The trial court also imposed a $500 victim assessment fee. The sentencing court reserved the issue of restitution, and Brown did not waive his right to be present at a future restitution hearing. Approximately five months later, the sentencing court entered a restitution order at a hearing with Brown's attorney present. Brown did not attend the hearing. The court imposed $92.56 in restitution.

## LAW AND ANALYSIS

On appeal, Gerald Brown contends that three of his five convictions, theft of a firearm, third degree theft, and second degree assault, merge into the first degree robbery conviction such that all three convictions must be vacated. The State concurs in part. The State agrees that Brown's conviction for assault in the second degree, which elevated

the crime of robbery to robbery in the first degree, is encompassed within that conviction and must be vacated on double jeopardy grounds. But, the State disagrees with Brown that the theft convictions are also encompassed within the robbery conviction.

The United States Constitution provides that a person may not be subject for the same offense to be twice put in jeopardy of life or limb. U.S. CONST. amend. V. Similarly, the Washington State Constitution provides that a person may not be twice put in jeopardy for the same offense. WASH. CONST. art. I, § 9. The guaranty against double jeopardy protects against multiple punishments for the same offense. *State v. Calle*, 125 Wn.2d 769, 776, 888 P.2d 155 (1995). The remedy for a double jeopardy violation is to vacate the lesser of the two convictions. *State v. Womac*, 160 Wn.2d 643, 660, 160 P.3d 40 (2007).

When analyzing an accused's plea of double jeopardy, this court employs various tests depending on the circumstances of the appeal. Those tests include the same evidence test, merger, the independent purpose test, and the unit of prosecution test. We discuss only the first three tests in this appeal. We apply the unit of prosecution test when the State charges the accused with more than one count of the same crime.

When the accused is convicted of different crimes based on the same or ongoing conduct, this court, when analyzing a double jeopardy claim, first examines the statutory language creating the respective crimes to see if the applicable statutes expressly permit punishment for the same act or transaction. *State v. Hughes*, 166 Wn.2d 675, 681, 212

P.3d 558 (2009). When the relevant statutes do not expressly disclose legislative intent to treat the charged crimes as the same offense, this court assesses whether the charged crimes are the same in law and fact, an analysis termed the "same evidence" test. *State v. Adel*, 136 Wn.2d 629, 632, 965 P.2d 1072 (1998).

The same evidence test mirrors the federal "same elements" standard adopted in *Blockburger v. United States*, 284 U.S. 299, 304, 52 S. Ct. 180, 76 L. Ed. 306 (1932); *State v. Adel*, 136 Wn.2d at 632. The *Blockburger* test is a rule of statutory construction used to discern legislative purpose. *State v. Marchi*, 158 Wn. App. 823, 829, 243 P.3d 556 (2010). Under the *Blockburger* test, when the same act or transaction constitutes a violation of two distinct statutory provisions, we determine whether to permit two offenses or only one by discerning whether each crime requires proof of an additional fact which the other does not. *Blockburger v. United States*, 284 U.S. at 304; *In re Personal Restraint Petition of Orange*, 152 Wn.2d 795, 820, 100 P.3d 291 (2004). Still, the *Blockburger* presumption may be rebutted by other evidence of legislative intent. *State v. Freeman*, 153 Wn.2d 765, 772, 108 P.3d 753 (2005).

If applicable, double jeopardy presents another method of determining legislative intent to allow two convictions even when two crimes have formally different elements. *State v. Freeman*, 153 Wn.2d at 772. Under double jeopardy's merger doctrine, when the degree of one offense increases by conduct separately criminalized by the legislature, this court presumes the legislature intended to only punish both offenses through the sentence

7

for the greater crime. *State v. Freeman*, 153 Wn.2d at 773. For instance, the doctrine applies when, to prove first degree rape, the State must prove not only that a defendant committed rape, but also that the rape was accompanied by an act defined as a crime elsewhere in the criminal statutes, such as assault or kidnapping. *State v. Vladovic*, 99 Wn.2d, 413, 420-21, 662 P.2d 853 (1983). Finally, even if, on an abstract level, two convictions appear to be for the same offense or if a lesser offense increases the punishment for a greater offense, the two crimes may be punished as separate offenses if each crime serves an independent purpose or effect. *State v. Freeman*, 153 Wn.2d at 773.

We first address whether the conviction for second degree assault merges with the conviction for first degree robbery and whether we should accept the concession of the State that merger applies. We accept the concession.

The first step of the merger analysis is to analyze the legislative intent of the applicable statutes. In this case, the statutes do not expressly authorize separate punishments. *See* RCW 9A.56.200; 9A.36.021.

A person is guilty of robbery in the first degree if, during the commission of a robbery, he is armed with a deadly weapon, displays what appears to be a firearm or other deadly weapon, or inflicts bodily injury. RCW 9A.56.200. Robbery in the second degree is any other robbery. RCW 9A.56.210. Assault in the second degree includes an assault with a deadly weapon. RCW 9A.36.021(1)(c). Therefore, when the State charges an

accused with robbery in the first degree for being armed with or use of a deadly weapon, the degree of the robbery increases as a result of a second degree assault.

*State v. Freeman*, 153 Wn.2d 765 (2005) stands for the proposition that conduct amounting to second degree assault elevates a crime of robbery to first degree robbery such that the two offenses merged. *Freeman* analyzed the assault and robbery statutes. In *Freeman*, our Supreme Court noted that to prove first degree robbery as charged, the State needed to prove the defendants committed an assault in furtherance of the robbery. Without the conduct amounting to assault, the accused would be guilty of only second degree robbery. Under the merger rule, assault committed in furtherance of a robbery merges with robbery unless an exception applies or there is other evidence of contrary legislative intent. In *Freeman*, the high court found no exception applied and merged the defendant's first degree robbery and second degree assault convictions.

Despite the strong language in *State v. Freeman*, no per se rule demands that assault in the second degree always merge into robbery in the first degree. *State v. Freeman*, 153 Wn.2d at 774. Rather, the court engages in a case by case approach. *State v. Freeman*, 153 Wn.2d at 774. Even if two convictions appear to merge on an abstract level under this analysis, they may be punished separately if the defendant's particular conduct demonstrated an independent purpose or effect of each. *State v. Kier*, 164 Wn.2d 798, 804, 194 P.3d 212 (2008).

We discern no independent purpose behind Gerald Brown's crimes. The sole purpose of the second degree assault was to facilitate the robbery. As noted by our high court in *State v. Kier*, "[t]he merger doctrine is triggered when second degree assault with a deadly weapon elevates robbery to the first degree, because being armed with or displaying a firearm or deadly weapon to take property through force or fear is essential to the elevation." *State v. Kier*, 164 Wn.2d at 806.

The State charged Gerald Brown's second degree assault conduct as an element of the first degree robbery charge. Brown, armed with a deadly weapon, struck Bruin Duke in the arm with a baseball bat aimed at his head. Although Duke protected himself, a baseball bat can cause substantial bodily harm. RCW 9A.04.110(6). Because the assault on Duke involved the use of a baseball bat as a deadly weapon, and served to threaten and intimidate Duke and Patrick West into complying with the taking of property, the assault elevated the robbery to first degree robbery. Accordingly, we direct vacation of the second degree assault conviction. *In re Personal Restraint Petition of Francis*, 170 Wn.2d 517, 525, 242 P.3d 866 (2010).

Relying on merger again, Gerald Brown contends that the theft of the pizza and other property, and theft of the firearm are the same takings necessary to support the first degree robbery conviction. Brown contends that the two thefts involved no separate or distinct conduct. The State responds that the legislature intended to separately punish charges of third degree theft and theft of a firearm from a robbery and the theft crimes do

not elevate the charge of robbery. The State only analyzes the theft of a firearm statute

and not theft in the third degree in its briefing. As to the theft charges, we apply the same

evidence test.

We first discuss third degree theft. This court must analyze the legislative intent

of the applicable statutes as the first step of the double jeopardy analysis. The statutes

creating the crimes of robbery and theft do not expressly permit multiple punishments for

the same underlying conduct. *See* RCW 9A.56.200; 9A.56.050. Absent express

authorization, this court applies the same evidence test.

A person commits first degree robbery when, during the commission of a robbery

or in immediate flight therefrom, he or she is armed with a deadly weapon, displays what

appears to be a firearm or other deadly weapon, or inflicts bodily injury. RCW

9A.56.200. Robbery is defined in RCW 9A.56.190:

> A person commits robbery when he or she unlawfully takes personal
> property from the person of another or in his or her presence against his or
> her will by the use or threatened use of immediate force, violence, or fear of
> injury to that person or his or her property or the person or property of
> anyone. Such force or fear must be used to obtain or retain possession of
> the property, or to prevent or overcome resistance to the taking; in either of
> which cases the degree of force is immaterial. Such taking constitutes
> robbery whenever it appears that, although the taking was fully completed
> without the knowledge of the person from whom taken, such knowledge
> was prevented by the use of force or fear.

A person commits third degree theft by committing the theft of property or

services that do not exceed $750 in value. RCW 9A.56.050. "Theft" is defined as "[t]o

11

wrongfully obtain or exert unauthorized control over the property or services of another

or the value thereof, with intent to deprive him or her of such property or services."

RCW 9A.56.020(1)(a).

Gerald Brown's conviction for third degree theft of the pizza and other property

violates double jeopardy because first degree robbery is the same in law and in fact as his

third degree theft conviction. Theft in the third degree is the same in law because it

requires proof of an unlawful taking, an element required by robbery. The taking of

property is elevated to a robbery by the use or threatened use of force. *State v.*

*Farnsworth*, 185 Wn.2d 768, 776, 374 P.3d 1152 (2016). The convictions are also the

same in fact. Brown was convicted of first degree robbery because he stole items,

including the pizza, valued at $750 or less, while armed with a deadly weapon.

Similarly, Brown's third degree theft charge was based on his unlawful taking of Bruin

Duke and Patrick West's property. Thus, proof of Brown's intentional, unlawful taking

of property valued at $750 or less, necessary to support his first degree robbery

conviction, is the same evidence used to support his third degree theft conviction.

Therefore, we also direct the vacation of Gerald Brown's third degree theft conviction.

Finally we analyze whether double jeopardy precludes the theft of the firearm

conviction. We look at the language of the robbery and theft of a firearm statutes to

determine whether the legislature intended to authorize multiple punishments for

convictions of robbery in the first degree and theft of a firearm. The statutes do not

expressly permit multiple punishments for the same underlying conduct. *See* RCW

9A.56.200; 9A.56.300(1). Thus, we move to the "same evidence" rule.

First degree robbery and theft of a firearm are not identical in law. First degree

robbery requires the taking of another's property "against his or her will by the use or

threatened use of immediate force, violence, or fear of injury to that person or his or her

property" and requires proof that the defendant was armed with a deadly weapon,

displayed what appeared to be a firearm or other deadly weapon, or inflicted bodily

injury. RCW 9A.56.190; 9A.56.200. These are not elements of theft of a firearm.

Unlike the offense of robbery, theft of a firearm requires the taking of a firearm. Two

convictions do not violate double jeopardy when "each offense charged contains at least

one element that differs from the other." *State v. Lynch*, 93 Wn. App. 716, 724, 970 P.2d

769 (1999). Therefore, under the "same evidence" test, Gerald Brown's contention that

his convictions for first degree robbery and theft of a firearm violate double jeopardy

fails. Because the "same evidence" test is not necessarily dispositive, this court must

also examine the history and intent of the statutes to determine whether there is any clear

indication that the legislature intended to punish both crimes as one, thereby overcoming

the presumption that the legislature intends to punish different crimes as separate

offenses. *State v. Calle*, 125 Wn.2d at 780 (1995).

The statutes for robbery and theft of a firearm address different evils. "The

robbery statute is designed to discourage the taking of property from the person of

13

another by use or threatened use of force, and serves to protect individuals from loss of property and threat of violence to their persons." *State v. Vermillion*, 112 Wn. App. 844, 861-62, 51 P.3d 188 (2002). On the other hand, the theft of a firearm statute focuses on the evil of firearms in the hands of dangerous individuals. For example, in 1995, the legislature passed the Hard Time for Armed Crime Act. The legislature designated theft of any firearm, regardless of its value, as a class B offense with a seriousness level of VI, while first degree theft, also a class B felony, has only a seriousness level of II. LAWS OF 1995, ch. 129, § 10. The legislative history shows no intent to punish both crimes as one.

Gerald Brown contends that the taking of the firearm necessary to support the theft of a firearm conviction was the same taking necessary to support the robbery conviction and involved no separate or distinct conduct. We disagree. Brown took other items of value during the home invasion such as a machete and marijuana, not just the .22 rifle. Had the firearm been the only item stolen, Brown might have a stronger argument. Unlike Brown's second degree assault conviction which elevated the degree of robbery, Brown's theft of a firearm had no such impact on his first degree robbery conviction. Brown's first degree robbery conviction more likely hinged on Brown's wielding of the baseball bat, not the stolen .22 rifle.

## Restitution Order

Gerald Brown contends that the sentencing court violated his due process rights when the court entered a restitution order in his absence after Brown failed to waive his

right to be present. The State concedes error and agrees the restitution order should be vacated. We accept the State's concession.

Under RCW 9.94A.753, the trial court must determine any amount of restitution due at a sentencing hearing or at a hearing within one hundred eighty days. Because the setting of restitution is an integral part of sentencing, a defendant has a right to be present at a restitution hearing and be represented by counsel at that hearing. *State v. Milton*, 160 Wn. App. 656, 659, 252 P.3d 380 (2011); *State v. Kisor*, 68 Wn. App. 610, 620, 844 P.2d 1038 (1993).

Gerald Brown did not attend the restitution hearing, nor did Brown waive his right to be present at the hearing. In the judgment and sentence, the box indicating "The defendant waives his right to be present at any restitution hearing (sign initials)" is unchecked and uninitialed by Brown. CP at 26. Therefore, we vacate the $92.56 restitution order and remand for a new restitution hearing. *See State v. Milton*, 160 Wn. App. at 659 (2011).

## CONCLUSION

We vacate Gerald Brown's convictions for assault in the second degree and theft in the third degree. We affirm his conviction for theft of a firearm in addition to the unchallenged conviction for first degree robbery. We remand to the sentencing court for resentencing based on the vacation of two crimes. We also remand for vacation of the restitution order and a new restitution hearing.

No. 36601-4-III
*State v. Brown*


A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

_____
Fearing, J.

WE CONCUR:

_____          _____
Lawrence-Berrey, J.                                    Pennell, C.J.